Carl W. BAUER and Jane C. Bauer,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 78–1699.

United States Court of Appeals,
Fifth Circuit.

April 25, 1979.

Before COLEMAN, GODBOLD and TJO-FLAT, Circuit Judges.

John A. Stassi, II, New Orleans, La., for plaintiffs-appellants.

Edward L. Shaheen, U. S. Atty., Shreveport, La., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, Jonathan S. Cohen, William S. Estabrook, III, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before THORNBERRY, CLARK and RONEY, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a tax refund case. The sole issue on appeal is whether taxpayers timely filed the action. Taxpayers, Carl W. Bauer and Jane C. Bauer, filed separate returns for 1969 and 1970 and a joint return for 1971 in which they claimed both a depletion deduction and a charitable contribution deduction. In March of 1972, taxpayers filed a claim for refund for taxable years 1969 and 1970 asserting they were entitled to an increased depletion allowance. This claim prompted the Internal Revenue Service to audit taxpayers' 1969, 1970, and 1971 returns. In September, 1972, the Service notified taxpayers that it would allow the claim for an increased depletion allowance, but that it had also determined that taxpayers' claims for contribution deductions were improper. For the taxable years of 1969 and 1970, the Service therefore reduced taxpayers' refund attributable to the depletion deductions by the increased taxes attributable to the disallowed contribution deductions. Because the Service also disallowed taxpayers' charitable contribution deductions for 1971, for which taxpayers had not filed a claim, a deficiency arose for that year, which taxpayers paid. Taxpayers protested the disallowance of the charitable contributions to the Appellate Division of the Internal Revenue Service and executed Forms 872, Consent Fixing Period of Limitation Upon Assessment of Income Tax, extending the statutory period for making an assessment of taxes for the taxable year 1969 to June 30, 1974. In December, 1973, each taxpayer separately executed Forms 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, for the taxable years 1969, 1970, and 1971. In January, 1974, taxpayers received notices that for the taxable years 1969 and 1970 the Appellate Division had allowed their claim for refund with respect to the depletion deductions but had disallowed their charitable contribution deductions. The Service did not at that time respond to taxpayers' claims for the 1971 taxable year. Taxpayers took no further action until April of 1975 when they filed a formal claim for refund for 1971 on Form 843 asserting both the depletion allowance and the charitable contribution claims. This claim stated: "Related claims are being filed with respect to years 1969 and 1970." In December, 1975, the Service allowed the depletion claim in full but denied the charitable contribution deduction. Taxpayers filed this

action with the district court in March, 1976, asserting that the Service improperly denied their charitable contribution claims for all three taxable years. On cross-motions for summary judgment, the district court held that the notice of disallowance taxpayers received in January, 1974, triggered the two year period within which the Code required taxpayers to file suit. Because taxpayers had not filed suit within this period, the court held their claims for refund with respect to 1969 and 1970 were untimely. Because the Service did not disallow taxpayers' claim with respect to 1971 until December, 1975, however, the court held that this aspect of the suit was timely and found in favor of taxpayers on the merits. Taxpayers appeal.

The parties agree that if taxpayers had previously filed a claim for refund based on the charitable contribution deductions, the January, 1974 notice constituted a disallowance of the claim and that taxpayers had two years from the date of that notice to file an action in the district court pursuing that claim. *Smith v. United States,* 478 F.2d 398 (5 Cir. 1973); I.R.C. § 6532(a)(1). The parties also agree, however, that if taxpayers had not presented the charitable contribution claim to the Service before the January, 1974 notice of the disallowance, that notice did not begin the running of the statute of limitations. *See United States v. Rochelle,* 363 F.2d 225, 233 (5 Cir. 1966); I.R.C. § 7422(a). Taxpayers therefore argue that the only claim they had presented to the Service prior to the 1974 notice was that of March, 1972, which raised only the depletion allowance issue. In the district court, the I.R.S. argued and the judge agreed that taxpayers' administrative protest and appeal of the disallowance of the charitable deductions for 1969 and 1970 constituted a claim for refund. Therefore, the court held that the subsequent notice of disallowance triggered the statute of limitations. The Service has now abandoned this argument, however, and urges us to affirm the district court's judgment on another

ground, not argued below. *See Lowe v. Pate Stevedoring Co.,* 558 F.2d 769, 770–71 n.2 (5 Cir. 1977); *Spurlin v. General Motors Corp.,* 531 F.2d 279 (5 Cir. 1976). It argues that the Forms 870 that taxpayers executed in December, 1973, were claims for refund based on the charitable contribution theory. We accept this argument and therefore need not decide whether the rationale of the district court was correct.

■■■ The regulations explain the preferred methods by which to submit claims for refund to the I.R.S. Treas.Reg. § 301.-6402–3. "Informal claims" not in compliance with the regulations are also sufficient, however, if they satisfy certain requirements of clarity and specificity. *United States v. Kales,* 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941); *Helis v. Usry,* 496 F.2d 1319 (5 Cir. 1974). Several courts have discussed whether the submission of an I.R.S. form other than those mentioned in the regulations constituted a permissible informal claim for refund. *Barenfeld v. United States,* 442 F.2d 371, 194 Ct.Cl. 903 (1971) (Form 870); *Cumberland Portland Cement Co. v. United States,* 104 F.Supp. 1010, 122 Ct.Cl. 580 (1952) (Form 874, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment); *True Bros. v. United States,* 93 F.Supp. 107 (D.Mass.1950) (same). Each of these courts decided that the particular form before it did not suffice as a claim. The courts so concluded, however, because the forms "did not contain any language which informed the Internal Revenue Service, either expressly or by clear implication, that the present plaintiffs proposed to contest the propriety of, and to seek a refund or credit respecting, any deficiency that might be assessed . . . ." *Barenfeld,* 442 F.2d at 374. Since the issuance of the form discussed in *Barenfeld,* the I.R.S. has revised Form 870. The form now explicitly informs the taxpayer that the Service will consider the form as a claim for refund if timely filed.[1] There-

---

1. It states:
   This waiver on which a taxpayer agrees to overassessments of income tax and penalty,

if any, determined by the Internal Revenue Service will, if executed and filed within the statutory period of limitations for filing a

fore, there can be no doubt that taxpayers' filing of the Form 870 constituted a claim for refund. Taxpayers argue, however, that even if the form is a claim for refund, it raises only the depletion allowance issue and not the charitable contribution issue. The fact that the only *overassessment* resulted from the improperly calculated depletion deduction and that the charitable contribution deduction created only an offsetting *deficiency* could support this argument because the form suggests that the grounds of the *overassessment* will be considered the basis of the refund claim. Although this argument is initially appealing, upon closer examination we must reject it. The form actually states that "[t]he grounds upon which the overassessments were determined by the Internal Revenue Service shall be considered the bases of the claim." The figures listed as overassessments on the 870 forms were determined by subtracting the charitable contribution deficiency from the depletion overassessment.[2] "The grounds upon which the overassessments were determined" were both the depletion and the contribution theories. Thus, the 870 forms were claims for refund based on both the depletion and the contribution

grounds.[3] The notice of disallowance issued after taxpayers submitted the 870 forms therefore began the running of the statute of limitations.

■ Because we find that taxpayers had submitted a claim for refund based on the contribution theory before the notice of disallowance, we may easily dispose of taxpayers' second argument. This argument is that the Form 843 that taxpayers filed with respect to the 1971 taxable year in 1975 constituted an informal claim with respect to the 1969 and 1970 taxable years because of the reference in that filing to "similar claims being filed" for the earlier years. Assuming this argument is correct, it is irrelevant. The statute of limitations began to run when the notice of disallowance issued in January, 1974. Any subsequent refund claim based on the grounds properly disposed of in that notice could not have tolled the running of the statute. *Kelson v. United States,* 503 F.2d 1291 (10 Cir. 1974); *Stratmore v. United States,* 463 F.2d 1195 (3 Cir. 1972); I.R.C. § 6532(a)(4). Therefore, the district court's judgment that the statute of limitations barred taxpayers' assertion of their charitable contribution

claim for refund or credit, be considered a valid claim for refund or credit of any overpayment of tax and penalty, if any, attributable to the overassessments. The grounds upon which the overassessments were determined by the Internal Revenue Service shall be considered the bases of the claim. *See* Rev.Rul. 68–65 1968–1 C.B. 555.

**2.** For example, the Service found that Carl Bauer's miscalculation of his depletion deduction for 1969 resulted in his paying $3639.00 in unnecessary taxes for that year. The Service also found, however, that his charitable contribution deduction for 1969 improperly reduced his taxes by $2337.07. This resulted in net overassessment of $1301.93, which figure was listed under the heading "Overassessments" on the 870 form for 1969. It is clear that the $1301.93 figure was "determined by" reference to both the depletion deduction and the contribution deduction.

**3.** It should be noted that this interpretation of the form's language works no great injustice upon taxpayers. Taxpayers were fully aware that the only disputed issue after the I.R.S.

audit was the propriety of the contribution deduction. The Service admitted the depletion overassessment. Taxpayers themselves, in a letter accompanying the 1975 claim, noted:

For your additional information in processing this claim, we are also enclosing herewith photostatic copies of your letters of January 10, 1974 addressed to the taxpayers indicating partial disallowances of similar claims filed by the taxpayers with respect to their taxable years 1969 and 1970. These prior claims were allowed entirely to the extent of the additional deduction for cost over percentage depletion and were partially disallowed only to the extent of the claimed deduction for charitable contributions. . . .

Thus, taxpayers apparently thought they had filed a claim based on the charitable contribution theory prior to the 1974 notice of disallowance. Furthermore, the notice of disallowance of the contribution claim explicitly warned taxpayers: "If you wish to bring suit or proceedings to recover any taxes, penalties, or other moneys for which this notice of disallowance is issued, the law requires you to do so within two years from the date of this letter."

claim for 1969 and 1970 was correct and is AFFIRMED.