Lee MARTIN, Executor of the Estate of Esther S. Martin and Trustee of the Esther S. Martin Living Trust, Plaintiff–Appellant,

v.

The UNITED STATES of America, Defendant–Appellee.

Nos. 86–1790, 86–2576.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1987.

Decided Nov. 9, 1987.

Rehearing and Rehearing En Banc Denied Jan. 11, 1988.

Scott A. Brainerd, Brainerd & Bridges, Chicago, Ill., for plaintiff-appellant.

Douglas G. Coulter, Asst. Atty. Gen., Tax Div., Washington, D.C., for defendant-appellee.

Before WOOD, CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Lee Martin, Executor of the Estate of Esther S. Martin and Trustee of the Esther S. Martin Living Trust (the "estate"), appeals from a judgment dismissing its complaint for an estate tax refund for want of jurisdiction because the estate failed to file a proper administrative claim for refund. We affirm.

## I.

Esther Martin died in June, 1981 leaving the bulk of her estate with a life interest to her husband and the remainder to qualified charitable beneficiaries. In addition, the decedent set up a "living trust" that provided for payment of inheritance and estate taxes and directed that an amount of property equal to the "maximum marital deduction allowable" was to pass to her husband. The decedent's will also provided that her husband should receive the "maximum marital deduction allowable" less certain amounts not relevant here. Esther Martin's federal estate tax return showed that she had a taxable estate of $321,477.90 and owed taxes of $43,815.18. The estate paid this amount on or before March 13, 1982.

On May 6, 1983, the Commissioner of Internal Revenue (the "Commissioner") issued a "thirty-day" letter and an examination report proposing that the estate had an estate tax deficiency of $91,975.24. The most significant adjustment proposed by the examination report was a decrease in the marital deduction claimed by the estate, an adjustment ostensibly attributable to a provision of the living trust that all legal obligations and state and federal death taxes were payable out of the amounts held by the trustee. The Commissioner reasoned that after payment of expenses and taxes there would be insufficient remaining property to give the surviving spouse one-half the adjusted gross estate, which is the maximum possible marital deduction. *See Farley v. United States*, 581 F.2d 821, 835, 217 Ct.Cl. 560, 585 (1978).

After the estate protested this proposed deficiency, the Internal Revenue Service (the "IRS") reconsidered the examination report and, in a letter dated September 7, 1983, proposed that the estate actually had a deficiency of $539,227.63. This hugely increased deficiency resulted from a total disallowance of the claimed marital deduction because of an alleged impossibility of calculation due to the accruing of interest on the unpaid deficiency. On September 19, 1983, the estate filed a 37-page protest (the "September letter") to the second report and letter. This September letter was

primarily devoted to the estate's argument that the bequest to the surviving spouse was specific rather than residuary, and that therefore it could not be diminished by administrative expenses, taxes or interest. Accordingly, argued the estate, it could claim the full allowable marital deduction (one-half the adjusted gross estate).

The last page of the September letter consisted of three paragraphs entitled *Taxpayer's Conclusion*, which stated in pertinent part:

> Every calculation that taxpayer's representatives have made in their computation of the correct marital deduction following receipt and intense study of your second 30-day letter, has resulted in a tax of zero dollars owed to the government in federal estate and gift taxes. *A refund of $43,815.00 is therefore claimed by this letter.*
>
> . . . .
>
> We repeat here our earlier request for a prompt hearing at the office of the Regional Director of Appeals so that we may proceed expeditiously through the administrative appeals available within the Internal Revenue Service which are requisite for further judicial review.

Appellant's App., Ex. G-37 (emphasis supplied).

Thereafter, the Office of Appeals of the IRS reviewed the estate's protest of the proposed deficiency. Between September, 1983, and May, 1984, the parties discussed the question whether the marital deduction claimed by the estate should be reduced by the estate tax liability (and interest on the tax liability). Eventually, on May 10, 1984, the estate signed a form titled "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of an Acceptance of Overassessment" (Form 890–AD) agreeing to an additional assessment of $22,971.87. This form provided, *inter alia:*

> If this offer is accepted by or on behalf of the Commissioner, the case will not be reopened in the absence of fraud, malfeasance, concealment, or misrepresentation of material fact, or an important mistake in mathematical calculation; and no

claim for refund or credit will be filed or prosecuted other than for the overassessment shown above.

Appellant's App., Ex. J-1.

In addition, the estate appended a proviso to the form that stated:

Taxpayer reserves the right to file a claim for refund relative to the following items:

. . . .

*Schedule M. (Marital Deduction).* The legal effect of the wording of decedent's Will, and more specifically, item IV of decedent's 1978 living trust, required the trustee to pay "all inheritance and estate tax," a mechanical calculation based upon the date of death values resulted [sic] in an interrelated computation thereby reducing the marital deduction to the extent of the Federal estate tax. Taxpayer reserves the right to file a claim for refund on this item based upon a computation of the marital deduction consisting of a value equal to one-half of the adjusted gross estate. It is further agreed that any and all administration expenses shall be includible on Schedule J of the estate tax return and are deductible from the gross estate, but that taxpayer shall not take any of these deductions for Federal income tax purposes.

Appellant's App., Ex. J-2.

The estate paid the $22,971.87 deficiency on March 12, 1985. On March 21, 1985, the estate filed this lawsuit seeking a refund of $40,133.65 plus interest, and recovery of $36,000 in attorney's fees and expenses.

The estate alleged in its complaint that the Form 890-AD "constituted and substituted for a claim for refund for the overpayment of tax attributable to the grounds specified therein." Record 1 at 3. The government filed a motion to dismiss under Federal Rule of Civil Procedure 12(b) for lack of subject matter jurisdiction based on the estate's alleged failure to file a claim for refund as required by section 7422(a) of the Internal Revenue Code of 1954 (26 U.S. C.). The district court granted the government's motion to dismiss, noting that "[n]othing in the record would warrant a conclusion that Mr. Martin ever filed a claim for refund that would trigger an administrative review of the assessment of the tax in question, or that the Internal Revenue Service undertook such a review." Record 18 at 5. After the estate's motion for reconsideration was denied, this appeal followed.

On December 19, 1985, while the present lawsuit was pending in the district court, the estate filed a formal Form 843 "Claim for Refund" with the IRS in the amount of $43,815.18. In July, 1986, the IRS sent the estate a "Statutory Notification of Claim Disallowance" denying the formal claim for refund. The IRS stated its reasons for the disallowance:

The issues raised in the claim were considered during the years 1983 and 1984 by both the Examination Division and the Appeals Office and were found to be not valid. The [taxpayer] has presented no new facts or law which would require the government to alter its earlier positions. The Examination Division and Appeals Office reports earlier issued to the taxpayer explain in detail why the issues raised in this claim are not valid and the claim must be denied.

Appellant's Supplemental Brief, App., Ex. B (Supp.).

The estate then filed in the district court a motion under Federal Rule of Civil Procedure 60(b) for relief from judgment by reason of the "newly discovered evidence" contained in the statement accompanying the proposed claim disallowance. Alternatively, the motion sought to have the "Statutory Notification" included in the record on appeal in this case. The district court denied the motion, finding the document submitted by the estate to be "a late attempt to create jurisdiction in the courts while the suit pends." Appellant's Supplemental Brief, App., Ex. A (Supp.). The estate's request to have the record on appeal supplemented was also denied. The estate's appeal of the denial of this motion has been consolidated with its appeal of the refund suit.

## II.

A timely, sufficient claim for refund is a jurisdictional prerequisite to a refund

suit. *E.g., United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931); *Armstrong v. United States,* 681 F.2d 774, 775, 231 Ct.Cl. 52, 53 (1982). With respect to federal taxes, the United States has consented to be sued under the conditions set forth in section 7422 of the Internal Revenue Code, which provides in pertinent part:

(a) *No suit prior to filing claim for refund.*—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary.

26 U.S.C.A. § 7422(a) (West Supp.1987). The procedure for filing a formal claim for refund pursuant to section 7422 is set out in the Treasury Regulations:

(b) *Grounds set forth in claim.*—(1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claims must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Treas.Reg. § 301.6404-2 (1986).

It is undisputed that no formal claim for refund was made here until the estate filed a Form 843 with the IRS in December, 1985, while this case was pending in the district court. The estate claims that it filed this Form 843 statutory Claim for Refund as a back-up procedure in the event this Court dismissed this action (which it did): Because a dismissal of the action for want of subject matter jurisdiction would not be "with prejudice," plaintiff would, in any event, be allowed to refile an action after filing a claim for refund, with respect to those portions of the refund claim which remain within the statutory period of limitations.

Appellant's Supplemental Brief at 1 n.*.

Essentially, the estate argues that the September letter, either alone or in conjunction with other information presented to the Commissioner, constituted an informal claim for refund. Informal claims not in compliance with the Treasury Regulations have been held to be sufficient if they satisfy certain requirements of clarity and specificity. *See Bauer v. United States,* 594 F.2d 44, 46 (5th Cir.1979). Alternatively, the estate argues that the Form 890-AD, which was executed by way of settlement after extended negotiations between the estate and the Office of Appeals, constituted a claim for refund either independently or in connection with a prior claim. In support of this latter contention the estate relies on Revenue Ruling 68-65, which provides that a Form 890-AD "on which a taxpayer has agreed to an overassessment of ... tax determined by the Service will ... be considered a valid claim for credit or refund of any overpayment of tax attributable to the overassessment." Rev.Rul. 68-65, 1968-1 C.B. 555.

We cannot accept the estate's contention that the Form 890-AD constituted a claim for refund. The estate did not agree on Form 890-AD to an "overassessment" of tax, which would result in a *decrease* in taxes. Rather, it agreed to a "deficiency," an *increase* in taxes, which the estate paid on March 12, 1985. This distinction is spelled out plainly on the Form 890-AD. Had the IRS and the estate agreed to an overassessment, the estate would have become entitled to a refund. In such a situation, the function of an 890-AD agreement as a claim for refund is clear. *See Bauer,* 594 F.2d at 46-47. Here, however, where the estate agreed to a deficiency, we think Revenue Ruling 68-65 has no application. The estate apparently believed that the deficiency assessed against it was unfair and, thus, an "overassessment." While we are not without sympathy for the estate's confusion in this regard, we believe that the

estate is constrained by the clear terms of the agreement which it signed.

■ Nor do we believe that the proviso attached by the estate to the Form 890–AD was a sufficient informal claim for refund. In this proviso, the estate expressly preserved the right to file a *future* refund claim. The proviso language is inconsistent with an interpretation that the document itself constituted such a claim or that there was a *prior* filing by way of the September letter.[1]

■ The status of the 37–page September letter is more problematic. In order for an action that does not satisfy the regulation governing formal refund claims to be considered an adequate informal refund claim, certain standards must be met. First, the issue whether an informal claim has been filed is in important respects one of fact. *See Kuehn v. United States*, 480 F.2d 1319, 1320–21, 202 Ct.Cl. 473, 475 (1973) ("Each case must be decided on its own peculiar set of facts."). Second, the informal action must be in writing or have a written component. *American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915, 920, 162 Ct.Cl. 106, 113 (1963). Third, the matter set forth in the writing must be sufficient to apprise the IRS that a refund is sought and to focus attention on the merits of the dispute so that an examination of the claim may be commenced if the IRS wishes. *Angelus Mining Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1945); *American Radiator*, 318 F.2d at 920. *See generally* M. Saltzman, *IRS Practice and Procedure* ¶ 11.08[2].

■ There is no question that the September letter satisfied the writing requirement. The question whether the September letter was sufficient to apprise the IRS

that a refund was sought is a much more difficult one. Notification to the IRS is very important. The IRS must be informed that a refund of taxes is sought, and the informal claim must "contain all facts necessary to determine that a reduction in tax liability is involved." M. Saltzman, *supra*. It is not enough that the IRS has in its possession information from which it might find that the taxpayer is entitled to, or might desire, a refund. *American Radiator*, 318 F.2d at 920.

■ The September letter, which is 37 pages long, does contain the unambiguous statement: "A refund of $43,815 is therefore claimed by this letter." In addition, most of the letter is devoted to persuading the IRS that Esther Martin's bequest to her spouse is a "formula bequest" (a type of specific bequest) of an amount equal to the maximum allowable marital deduction, which should not be reduced by death taxes or expenses. Not only was this issue raised at length in written form but it was the subject of extended negotiations between the estate and the Appeals Office of the IRS. The IRS therefore was certainly on notice as to the principal issue in the deficiency assessment, which would, presumably, also be the principal issue in any potential refund suit. The estate argues vehemently that this notice sufficed to focus the attention of the IRS on the merits of its claim. Moreover, in a related argument, the estate contends that not only was its notice to the IRS adequate but also the IRS's ensuing consideration of the marital deduction issue constituted a waiver by that agency of its formal filing requirements.

The purpose of a claim for refund is to put the government on notice that it should subject the *claim*—as distinguished from

1. The facts here are quite different from those in *Neilson v. Harrison*, 131 F.2d 205 (7th Cir. 1942), which involved a taxpayer's conditional waiver of an IRS deficiency assessment. In *Neilson*, the question going to the merits of the taxpayer's claim was "steeped in much doubt," and both parties anticipated that it would soon be resolved by the Supreme Court. *Id.* at 209. Accordingly, the taxpayer reserved her right to have her income recalculated in conformity

with a change in the law favoring her position. The court found that "[t]he condition advised the Commissioner of the right upon which the taxpayer relied, and stated that if certain events happened, the taxpayer expected to have this right recognized." *Id.* The estate's addendum to Form 890–AD in this case was not conditional in nature; it only reserved the estate's right to file a refund claim (presumably in the future).

merely the legal principles that underlie it—to administrative review. We do not think that the estate fully appreciates this distinction. The marital deduction issue was raised in the September letter (at least up until its last page) in connection with the IRS's assessment of a deficiency rather than with a potential refund. Unfortunately for the estate, the statement in its letter may be viewed simply as a technique of argument: in response to the government's huge claimed deficiency, the estate may have countered with the opposite and equally extreme claim that no tax was due.

There is no doubt that the marital deduction issue was explored extensively in the September letter and in the subsequent negotiations. The government points out, however, that no specific adjustments to the marital deduction were proposed by the estate to justify the refund of $43,815 claimed in the September letter. The estate utterly failed specifically to explain why the tax owed by the estate was not the $43,815.13 reported on the original return but rather the "tax of zero dollars" to which the September, 1983 letter referred. The record does contain a computation resulting in a tax owed by the estate of $24,723.37, which was apparently prepared by the estate in the course of negotiations of the government's additional assessment. *See* Appellant's App., Ex. I. We think there is no doubt that the parties in the course of this negotiation explored a number of alternative tax results in the context of a tax deficiency of $539,227.63 proposed by the government. But this is not to say that either the September letter or the negotiations following it adequately apprised the IRS that a refund was sought or alerted the IRS to commence an examination into the claim. *See American Radiator,* 318 F.2d at 920.

The estate cites *Stuart v. United States,* 130 F.Supp. 386, 131 Ct.Cl. 174 (1955), and *Night Hawk Leasing Co. v. United States,* 18 F.Supp. 938 (Ct.Cl.1937), for the proposition that informal refund claims have been recognized in circumstances less compelling than those here. We believe, to the contrary, that the taxpayers in *Stuart* and *Night Hawk Leasing* presented much

stronger cases for recognition of their informal claims than does the estate here. In both prior cases, the substantive questions upon which the refund claims were based were pending in litigation at the time the informal claims were made. In both cases, the IRS was aware of the litigation, and was put on notice by the documents filed by the taxpayers that the taxpayers expected to receive a refund if the litigation was decided in their favor. *See Stuart,* 130 F.Supp. at 389; *Night Hawk Leasing,* 18 F.Supp. at 941.

■ Nor do we believe that the IRS's investigation of the marital deduction issue constituted a waiver on its part of the formal refund claim filing requirements. As we have already noted, the IRS's inquiry into its own deficiency assessment was not the equivalent of an inquiry into the estate's refund claim. In order to establish that the IRS waived the defects in a claim for refund, "[t]he showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim." *Angelus Milling Co.,* 325 U.S. at 297, 65 S.Ct. at 1165. For the reasons we have explained above, the discussions between the estate and the Appeals Office fall far short of establishing an "unmistakable showing" that the IRS considered the refund claim.

■ The question whether an informal claim has been filed is largely one of fact. *See Kuehn,* 480 F.2d at 1320–21; *Newton v. United States,* 163 F.Supp. 614, 619, 143 Ct.Cl. 293, 300 (1958); M. Saltzman, *supra* p. 660. In finding that the September letter did not constitute an informal claim for refund, the district court made these observations:

The September letter fails to fulfill the jurisdictional requirements because it is too informal and premature. The Internal Revenue Service cannot waive the formal requirements of Section 7422(a), although informal claims that result in full administrative review by the Service have sometimes been found sufficient. *Angelus Milling Company v. Commis-*

*sioner,* 325 U.S. 293 [65 S.Ct. 1162, 89 L.Ed. 1619] (1945). The September letter resulted in a review of the taxes in this action, but only of the prior assessment and not of the final assessment of taxes. Appellant's App., Ex. A–6. In finding that the September letter was "too informal and premature," the district court apparently meant that the letter was too informal because the alleged refund claim was a minor and incidental reference in a document overwhelmingly directed to the issue of a huge deficiency rather than to a refund. And the letter was presumably premature because the alleged refund claim was made some time before the deficiency was agreed to and paid and the issue of refund seemed ripe. While these district court findings do not rest on credibility determinations but are instead based on documentary evidence that is fully available to us, the Supreme Court has emphasized that we owe appropriate deference to district court findings. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1512–13, 84 L.Ed.2d 518 (1985).

Nonetheless, it is only fair to add that the IRS was not demonstrably "prejudiced" by what the estate did. We think the IRS knew the issues underlying either a deficiency claim or a potential refund and probably knew that the estate felt strongly that it had paid too much (and might therefore seek a refund). But the estate failed to meet the explicit statutory prerequisite to the government's waiver of sovereign immunity in a suit for refund. The policy of putting the IRS on notice to conduct an administrative review specifically directed to the estate's claim for refund was not adequately served.

■ Finally, there is the issue of the district court's denial of the estate's Rule 60(b) motion for relief from judgment based on newly discovered evidence. The evidence proffered consisted of a "Statutory Notification of Claim Disallowance" from the IRS denying a formal refund claim filed by the estate in December, 1985, while this case was pending in the district court. In this Statutory Notification the IRS asserted that it had considered the

estate's arguments (presumably principally involving the treatment of the marital deduction) in 1983 and 1984 and had rejected them. No new facts or law would require the government to change its positions.

Obviously, the Statutory Notification proved, if proof were needed, that the IRS had thoroughly examined the question of the proper marital deduction. But the administrative review of the Commissioner's adjustment to the marital deduction was not initiated by an administrative claim for refund but resulted from the estate's protest of a proposed deficiency in estate taxes. The only language in the September letter that referred to a refund contained the assertion that the estate had repeatedly computed the tax liability and found it to be zero (apparently in contrast with the $43,815.13 amount shown on the estate tax return). Even if the critical paragraph in the September letter was an informal request for a refund of the taxes paid with the return, there is nothing to indicate that the Commissioner's subsequent determination that the estate tax return understated the tax liability was undertaken pursuant to the paragraph in question. The estate never explained the specific basis for the conclusion that the liability shown on its tax return was wrong. The district court did not abuse its discretion in denying the motion.

■ Alternatively, the estate sought permission to supplement the record on appeal with the documents relating to the government's disallowance of its claim for refund. The district court did not abuse its discretion in declining to supplement the record on appeal after the appeal was filed. Generally, we should not consider facts that the district court did not have an opportunity to consider. *Busse v. United States,* 542 F.2d 421, 427–28 (7th Cir.1976).

We note that the estate does not argue that its formal Form 843 claim serves to "perfect" its alleged prior informal claims for refund of the taxes it paid in 1982. In some cases, where the statute of limitations has run and thus precludes a taxpayer from recovering the disputed taxes, an informal refund claim has served to toll the

statute of limitations when the informal claim's defects and lack of specificity have been remedied by a perfecting claim filed after the lapse of the statutory period. *See, e.g., United States v. Kales*, 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941); *Neilson*, 131 F.2d at 208. Assuming, arguendo, that in the present litigation we had found the September letter or the Form 890–AD sufficiently substantial to serve as predicates for subsequent perfecting claims, we think it dubious that ostensible perfecting claims filed after the present lawsuit could fulfill the statutory policy of notice to the IRS with respect to the 1982 payments. Of course, nothing in this opinion suggests that the estate is precluded from recovery of the taxes it paid in 1985.

AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

In my view, the taxpayer's letter of September 19, 1983 was sufficient notice to the Internal Revenue Service that the taxpayer was seeking a refund and of the basis for that claim. The adequacy of this notice is especially clear when one assesses the letter in the context of the overall negotiations between the taxpayer and the government.