**INDIANA NATIONAL CORPORATION and Its Subsidiaries Indiana National Bank, Indiana Realty, Inc., Indiana National Network Corp., Indiana Mortgage Corp., Consumer Marketing Services, Inc., Tower Agency, Inc., Indiana National Overseas Corp., TFAC, Indiana National Leasing, Inc. and Citadel Finance, Inc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. IP88–277–C.

United States District Court, S.D. Indiana, Indianapolis Division.

July 25, 1991.

Robert E. Johnson, Stephen D. Smith, Lisa A. Lutz, Krieg DeVault Alexander & Capehart, Indianapolis, Ind., for plaintiffs.

Peter Sklarew, Dept. of Justice, Tax Div., Washington, D.C., Jeffrey R. Hunter, Asst. U.S. Atty., Indianapolis, Ind., for defendant.

ENTRY

BARKER, District Judge.

This matter comes before the court on the defendant's motion for partial dismissal of this action for the recovery of federal corporate income tax.[1] Oral argument was heard on this motion on February 12, 1990.

In its motion, the United States asks this court to dismiss the plaintiffs' refund claims for the years 1967 and 1970 on the ground that these claims were not timely filed. "A timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit." *Martin v. United States*, 833 F.2d 655, 658–659 (7th Cir.1987) (citations omitted). The parties disagree as to the applicable limitations period. The plaintiffs also argue in the alternative that an agreement executed between the parties extended the time they had to file their claims.

## I. Background

The plaintiffs are affiliated corporations (alternatively, "the taxpayers") which filed consolidated Form 1120 income tax returns with the Internal Revenue Service. They instituted this action to recover federal corporate income taxes plus interest for the calendar years 1973, 1970, and 1967. The refund claim for 1973 is not at issue here.

The refund claim for the year 1970 is based solely upon the carryback of a net operating loss ("NOL") sustained by the taxpayers in 1973. The refund claim for 1967 is premised in turn upon an investment tax credit ("ITC") carryback to 1967 from 1970 "as a result of the net operating loss carryback from 1973 to 1970." Complaint, para. 21.

The taxpayers' 1973 return was due, after extensions, on September 15, 1974, a Sunday, and was filed on Monday, September 16, 1974. This return claimed bad debts in the amount of $6,038,574 and showed a NOL for the year of $4,125,569. Both parties agree that without the rough-

---

1. Although the defendant does not specify under which provision of Fed.R.Civ.P. 12 this motion is brought, since the defendant discusses the issues largely in jurisdictional terms, the court will consider this motion as having been brought under Fed.R.Civ.P. 12(b)(1).

ly six million dollars in bad debt deductions there would have been no NOL. However, the defendant points out that the same thing could be said for any number of the other deductions claimed by the taxpayers for 1973, totalling approximately $149 million.

The first time the plaintiffs filed an amended return for 1973 was on December 31, 1974. This first amended return reduced the bad debt deduction by $162,218 and contained various other adjustments, including increased deductions for amortization, depreciation, interest and partnership losses. The increases of these other deductions offset the decrease in the bad debt deduction, and the NOL was increased by $509,979 to $4,635,548. The plaintiffs also filed on December 31, 1974, a Form 1139—Corporate Application for Tentative Refund for the 1973 year, showing a carryback of the NOL along with an unused ITC, from 1973 to 1971 and 1970. The plaintiffs also filed a Form 1139 on December 31, 1974, for the year 1970, carrying back an unused ITC (freed up by the NOL carryback from 1973 to 1970) from 1970 to 1967. The plaintiffs did not at that time submit amended returns for 1970 and 1967.

The plaintiffs' second amended return was filed on January 7, 1975, to supersede the first amended return. With this second amended return, the plaintiffs claimed a refund of $8,780 plus interest.

The third amended return for 1973 was filed on September 15, 1977. As noted above, the refund claim for 1973 of $17,662 plus interest is not at issue here. However, the third amended return showed a NOL of $4,098,674, which is $26,895 less than the NOL shown on the original return for 1973. The lower NOL on the third amended return was the result of the combined effect of a lesser upward adjustment to deductions on the third amended return as compared with the prior two amended returns and an upward adjustment on the total income reported on the third amended

return but not on the prior two amended returns.

With this third and final amended return for 1973, the plaintiffs also filed amended returns, constituting refund claims, for both the years 1967 and 1970 on September 15, 1977. The 1970 form shows the carryback of the amended 1973 NOL of $4,098,-674 and claims a refund of $1,008,274 plus interest. The 1967 return shows the carryback of a ITC from 1970 to 1967 (after the NOL was freed up by the NOL carryback from 1973 to 1970) and claims a refund of $862,466 plus interest. The IRS never formally disallowed the refund claims for 1967, 1970, or 1973.

Attached as the plaintiff's complaint as exhibit E is a "Closing Agreement on Final Determination Covering Specific Items," entered into by the taxpayers and the IRS. This agreement reserves to the taxpayer the right to litigate the issue of whether its refund claims were timely and fixes the 1973 NOL at $3,807,182, which is less than the NOL of $4,098,674 claimed on the final amended 1973 return.

The taxpayers also executed a Form 872–B, "Consent Fixing Period of Limitations Upon Assessment of Miscellaneous Excise Taxes," for the years 1972 and 1973, allowing assessments of excise taxes until December 31, 1977.

## II. Discussion

At issue is the timeliness of the plaintiffs' claims for refund for the years 1967 and 1970. As noted above, these claims were filed on September 15, 1977. As a general matter, the limitations period for filing a claim for refund, as provided in Section 6511(a) of the Internal Revenue Code of 1954 (26 U.S.C.),[2] is the later of two years after payment or three years after the filing of the return for the tax year in question. The United States conceded in its Memorandum of Law in Support of Motion for Partial Dismissal ("Defendant's Brief"), page 9, "It appears that the claim filed on September 15, 1977, with

---

**2.** Unless otherwise indicated, section references in this entry will be to the 1954 Code in effect

with respect to the 1973 tax year.

respect to the 1973 year was timely filed under this provision." Neither party thinks that this general provision provides the applicable limitations period for the 1970 and 1967 years; however, they disagree as to which provision controls.

The United States maintains that the applicable provisions are found in Section 6511(d)(2)(A) and (4)(A), which contain special limitations periods for refund claims respecting overpayments attributable to NOL (and capital loss) carrybacks and investment credit carrybacks, respectively. As applicable to the 1973 loss year,[3] Section 6511(d)(2)(A) provided:

> If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback ..., in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be that period which ends with the expiration of the 15th day of the 40th month (or the 39th month, in the case of a corporation) following the end of the taxable year of the net operating loss ... which results in such carryback.

26 U.S.C. § 6511(d)(2)(A) (as amended by Section 512(e)(2) of the Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487). As for the carryback of the ITC from 1970 to 1967, which was freed by the carryback of the NOL from 1973 to 1970, the limitations period found in Section 6511(d)(4)(A) provided:

> [W]ith respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback ... from a subsequent taxable year, the period shall be that period which ends with the expiration of the 15th day of the 40th month, or 39th month, in the case of a corporation, following the end of such subsequent taxable year....

With respect to both the 1967 and 1970 refund claims, the limitations period under the above provisions expired on March 15, 1977. Thus, if the government's position that paragraphs (2)(A) and (4)(A)[4] apply here is correct, the taxpayers' claims for these years, filed on September 15, 1977, were not timely.

The taxpayers, of course, maintain that another provision of the Code governs the applicable limitations period. Section 6511(d)(1), which provides a special limitations period for claims related to bad debts and worthless securities, as in effect in 1973, provided as follows:

> (d) Special rules applicable to income taxes.—
>
> (1) Seven-year period of limitation with respect to bad debts and worthless securities.—If the claim for credit or refund relates to an overpayment of tax imposed by subtitle A on account of—
>
> (A) The deductibility by the taxpayer, under section 166 or section 832(c), of a debt as a debt which became worthless, or, under section 165(g), of a loss from worthlessness of a security, or
>
> (B) The effect that the deductibility of a debt or loss described in subparagraph (A) has on the application to the taxpayer of a carryover,
>
> in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be 7 years from the date prescribed by law for filing the return for the year with respect to which the claim is made. If the claim for credit or refund relates to an overpayment on account of the effect that the deductibility of such a debt or loss has on the application to the taxpayer of a carryback, the period shall be either 7 years from the date prescribed by law for filing the return for the year of the net operating loss which results in such carryback or the period prescribed in paragraph (2) of this subsection, whichever expires the later. In the case of a claim described in this paragraph the amount of the credit or refund may exceed the portion of the tax paid with-

---

3. The term "loss year" is used to indicate the tax year in which the NOL was generated, meaning 1973 in this case.

4. For simplicity's sake, the court will hereinafter refer to Section 6511(d)(2)(A) to designate both that provision and Section 6511(d)(4)(A).

in the period prescribed in subsection (b)(2) or (c), whichever is applicable, to the extent of the amount of the overpayment attributable to the deductibility of items described in this paragraph. Should this provision apply, the taxpayers' claims for refunds for 1967 and 1970, which were filed prior to March 15, 1981, would be timely.

The key to resolving this dispute is to determine whether the condition to the applicability to the seven-year limitations period in section 6511(d)(1), that "the claim for credit or refund relates to an overpayment on account of the effect that the deductibility of such a debt or loss has on the application to the taxpayer of a carryback," has been met in this case. "In interpreting a statute, this court's function '... is to give effect to the intent of Congress.' [*United States v. American Trucking Ass'ns*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940).] The most persuasive evidence of this intent is the words selected by Congress." *Director, Officer of Workers' Compensation Programs v. Forsyth Energy, Inc.*, 666 F.2d 1104, 1107 (7th Cir. 1981); *see also United States v. Markgraf*, 736 F.2d 1179, 1182 (7th Cir.1984) ("We begin, as we must, with the language of the statute itself." (citations omitted)), *cert. dismissed*, 469 U.S. 1199, 105 S.Ct. 1154, 84 L.Ed.2d 308 (1985).

Tracking the language of the statute, the plaintiffs explain their position as follows:

A reading of Section 6511(d)(1) reveals that if the following requirements are met, the seven-year period of limitation applies in this case: (i) a claim for credit or refund (i.e., the plaintiffs' 1967 and 1970 claims for refund), (ii) relates to an overpayment (i.e., the plaintiffs' overpayments in 1967 and 1970) (iii) due to the effect of the deductibility of a bad debt (i.e, [sic] the effect of plaintiffs' bad debt deduction for 1973 was to generate the NOL), (iv) has on the application to a taxpayer of a carryback (i.e., the effect of plaintiffs' 1973 NOL attributable to the bad debt deduction is that the NOL may be carried back), then the period of limitation is the longer seven-year period.

Plaintiffs' Memorandum in Opposition to Defendant's Motion for Partial Dismissal ("Opposition Brief"), p. 13.

The defendant maintains that section 6511(d)(1) is only applicable where a taxpayer's bad debt deductions are either increased or discovered after the filing of the original return. (In this case, the plaintiffs' bad debt deductions for 1973 were only adjusted downward after the filing of the original return.) According to the defendant, the mere fact that a NOL is composed in part, even in large part, of a bad debt deduction shown on an original return does not satisfy the plain language of the statute, which specifically provides that the overpayment for which refund is claimed must be "on account of the effect that the deductibility of [a bad debt] has on the application to the taxpayer of a carryback...." "This is because, where an originally reported bad debt deduction contributing to an NOL is decreased, the 'effect' of such decrease on the carryback would not generate an overpayment." Defendant's Brief, p. 14.

■ Both the plaintiffs' and the defendant's readings of the statute are plausible. Although the plaintiffs' interpretation initially appears more straightforward, as it does not depend on emphasizing any particular words, the defendant's interpretation of the statute gains strength when (d)(1) is read in the context of section 6511 as a whole. As the Supreme Court has dictated, "statutory language must always be read in its proper context. 'In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988)." *McCarthy v. Bronson*, — U.S. ——, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991). Paragraph (d)(2)(A) of section 6511 provides an extended limitations period for a credit or refund claim which "relates to an overpayment attributable to a net operating loss carryback...." This suggests that to avoid redundancy, paragraph (d)(1) must relate to situations in which the claim

is attributable to something more than a net operating loss carryback, thereby supporting the defendant's emphasis, although not ruling out the plaintiffs' interpretation. Since the language of the statute cannot plainly be construed to support one position as opposed to the other, the court finds that section 6511(d)(1) is ambiguous.

■ The taxpayers contend that any ambiguities in this statute should be construed in favor of the taxpayers. They cite *Gould v. Gould*, 245 U.S. 151, 153, 38 S.Ct. 53, 53, 62 L.Ed. 211 (1917), in which the Court noted, "In case of doubt [statutes levying taxes] are construed most strongly against the government, and in favor of the citizen." (citations omitted). Although part of the Internal Revenue Code, section 6511(d)(1) does not itself impose any taxes, rendering this principle of questionable applicability. Moreover, the United States counters with the principle that limitations upon the United States' consent to be sued must be strictly observed. *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981). The competing principles invoked by the parties provide little help in resolving the ambiguity of section 6511(d)(1).

When the wording of a statute is ambiguous, a court may look to its legislative history for assistance in determining the statute's meaning. *Ballard v. Commissioner*, 854 F.2d 185, 188 (7th Cir.1988). In support of its construction of section 6511(d)(1), the defendant cites the following portion of a House Report on section 322(b)(5) of the Internal Revenue Code of 1939, added by the Revenue Act of 1942, ch. 619, 56 Stat. 798, which was the forerunner of section 6511(d)(1) and which provided a seven-year limitation period for claims based on bad debts:

Under the existing law, the taxpayer may be whipsawed out of a deduction for a bad debt because of the uncertainty as to the time at which the debt becomes worthless. *Later evidence* often discloses that present decisions as to the year in which a debt becomes worthless are erroneous. For example, the taxpay-er concludes that a debt has become bad and takes the deduction in that year, only to discover by *later evidence* that the debt actually became worthless three years previously. The statute of limitations having run on such previous year, this deduction is lost forever to the taxpayer. *Conversely*, where the debt actually became worthless in a year later than the year chosen by the taxpayer, the 3-year statute of limitation may operate against the Government.

To relieve this inequitable situation, the bill replaces the present 3-year statute of limitations *in such cases* with a 7-year statute, giving a considerably greater flexibility to the allowance of bad debt deductions in the proper year.

H.R.Rep. No. 2333, 77th Cong., 1st Sess. 44–45 (1942–2 Cum.Bull. 372, 408) (emphasis added).

Although the sentence in the above text beginning with "Conversely" does give the court pause, the reference to a situation where "later evidence" reveals to a taxpayer that a debt had previously become worthless does support the defendant's reading of the section 6511(d)(1), that it only applies where the bad debt deduction is newly discovered or increased. It is true, as the plaintiffs point out on page 14 of their rebuttal brief, that this excerpt does not refer to a situation where a bad debt is later increased or later decreased. However, the import of the quoted text is that the extended limitations period was intended to cover situations where the taxpayer becomes aware of the availability of a bad debt deduction at some point after the original filing.

The House Report indicates that the extended limitations period was enacted to protect taxpayers in those situations where uncertainty concerning the time at which a debt becomes worthless could hamper their ability to claim refunds relating to bad debt deductions within the limitations period. As the court in *Armstrong v. United States*, 681 F.2d 774, 776, 231 Ct.Cl. 52 (1982), noted, "The 7-year period was designed to prevent possible prejudice to those taxpayers whose otherwise legit-

imate deduction might be placed in jeopardy by the general 3–year period." Although the plaintiffs' bad debt deduction was adjusted here, it was only decreased after the original filing, thus not calling into play this legislative concern. The legislative history thus supports the United States' position; that section 6511(d)(1) applies only in those situations where the taxpayer's bad debt deduction is increased or discovered after an original filing.

The plaintiffs attempt to recast the defendant's position as a requirement that the NOL carryback must be attributable to the bad debt deduction alone, and the plaintiffs maintain that this position is refuted by section 6511(d)(1) as well as applicable Treasury regulations. They cite the last sentence of section 6511(d)(1), which provides that claims for credit or refund are limited "to the extent of the amount of overpayment attributable to the deductibility of items described in this paragraph [bad debts and worthless securities]." The plaintiffs also quote Treas.Reg. § 301.-6511(d)–1(a)(4) (amended by T.D. 6425, 1959–2 C.B. 384), which provides:

> If the claim involves an overpayment based not only on the deductibility of items described in subparagraph (1) of this paragraph [bad debts and worthless securities] but also on other items, and if the claim with respect to any items is barred by the expiration of any applicable period of limitation, the portion of the overpayment attributable to the items not so barred shall be determined by treating the allowance of such items as the first adjustment to be made in computing such overpayment.

The plaintiffs maintain that the last sentence of section 6511(d)(1) and the accompanying regulation provide a "sorting mechanism" in the statute, whereby a taxpayer who has both deductible items which are barred on limitations grounds from carryback and bad debt deductions which can be carried back under the seven year period "will only be entitled to utilize the seven-year period of limitation with respect to the portion of the NOL attributable to the bad debt deduction." Opposition Brief, p. 22. The statute and the regulation thus con-

template that a NOL may be comprised of more than just a bad debt deduction, which is discordant with the plaintiffs' characterization of the defendant's position.

The defendant does not, however, maintain that a taxpayer's NOL carryback must be attributable to a bad debt deduction alone, *see* Defendant' [sic] Reply to Plaintiff's Memorandum in Opposition to Partial Dismissal ("Reply Brief"), p. 5. Their position is rather that the overpayment for which a refund may be sought under section 6511(d)(1) is only on account of the effect of the deductibility of a bad debt "on the application to a taxpayer of a carryback" when that bad debt deduction is increased over the amount of the bad debt deduction originally reported; otherwise, the claim for refund is merely on account of the taxpayer's taking of a carryback. That a taxpayer might have other deductions which contributed to a NOL does not affect the defendant's interpretation of the statute (the key is what happens to the bad debt deduction), and the last sentence of the statute as well as the accompanying regulations are thus consistent with the United States' position.

The plaintiffs attempt to support their interpretation by advancing the text of section 6511(d)(2)(A)(ii), which specifically provides that it applies "with respect to an overpayment attributable to the creation of, or an increase in" a NOL carryback. The plaintiffs also cite the accompanying legislative history, which likewise provides that "The amendments apply only to that portion of the overpayment for any taxable year which is attributable to the creation of, or an increase in" a NOL carryback. S.Rep. No. 663, 86th Cong., 1st Sess. 622, 623, *reprinted in* 1959 U.S.Code Cong. & Admin.News 2591, 2592. The argument that the plaintiffs make is that "[i]f Congress had the same concern when it drafted Section 6511(d)(1) as it had when it drafted Section 6511(d)(2)(A)(ii), it would have included similar or identical restrictive language." Opposition Brief, p. 18. The reference to the text and legislative history of section 6511(d)(2)(A)(ii) is thus made to show that the omission of language explic-

itly requiring the bad debts at issue to be newly discovered or increased means that such requirements do not apply in section 6511(d)(1).

If both of these sections were drafted concurrently and related to the same subject, the plaintiffs' argument might have some force. However, as the defendant argued, "[t]he enactment of a different provision fourteen years later [the language in (d)(2) upon which plaintiffs rely was added in 1959; the language in (d)(1) relating to the interaction of bad debts and NOLs was added in 1945], and relating to the effect of a totally different type of tax attribute—the elimination of previously accrued income—cannot reasonably be argued to bear on Congressional intent behind Section 6511(d)(1)." Reply Brief, p. 9.

What little case law there is on this issue supports the defendant's interpretation of section 6511(d)(1). The defendant cites *Armstrong*, in which the court rejected the position there advanced by the government that "section 6511(d)(1) only applies after the NOL period has expired." *Id.* at 778. However, the court adopted the position which the United States advances here, that the seven-year limitations period applies in those situations where the bad debt deduction is newly discovered or increased. The *Armstrong* court made the following ruling:

> Finally, the alleged overpayments for the years 1972 and 1973 are not "on account of" the deductibility of a bad debt—plaintiffs took a bad debt deduction in 1975 which has not been contested. Rather, plaintiffs' overpayment resulted from the failure to utilize the NOL carryback provisions (section 172) within the time allotted under statute. The proper provision to be considered, then, is the NOL limitation period specified in section 6511(d)(2)(A), not the bad debt limitation period of section 6511(d)(1). If the real basis for the claim for refund

was a redetermination of the bad debt deduction itself, then any effect on an existing or newly created carryback would invoke the 7–year period of section 6511(d)(1).

*Armstrong*, 681 F.2d at 778 (footnote omitted). As in *Armstrong*, the NOL carryback in this case is not "on account of" the deductibility of a bad debt; since the plaintiffs' original filing, the only adjustments to that deduction were downward. They thus could not have generated the belated attempt to carryback a NOL.

The plaintiffs challenge *Armstrong* as inconsistent with another decision by the Court of Claims in *Smith Electric Co. v. United States*, 461 F.2d 790, 198 Ct.Cl. 644 (1972).[5] The plaintiffs refer to the Brief for the United States in establishing that the situation of the *Smith Electric* taxpayer is similar to that of the plaintiffs. The *Smith Electric* taxpayer added a sum to its bad debt reserve on its 1960 return, the amount of which was not later changed. Approximately six years later, the taxpayer filed refund claims for 1957 and 1958 which arose from a NOL for 1960 as a result of the bad debt deduction. While the facts of that case are in relevant respects similar to those of the plaintiffs here, the limitations question at issue here was simply not addressed by the *Smith Electric* court. In the words of the *Smith Electric* court:

> The sole issue in this case is whether the special seven-year statute of limitations, with respect to filing claims for refund on account of the deductibility of a worthless debt, is applicable to taxpayers on the reserve method as well as to those on the direct charge-off method.

*Smith Electric*, 461 F.2d at 791 (footnote omitted). Since *Smith Electric* was concerned with a different issue, it does not assist in this court's analysis.

The defendant also draws support for its position from Revenue Ruling 55–523, 1955 Cum.Bull. 497. "Since revenue rulings are

---

5. The plaintiffs criticize *Armstrong* for being decided by only a three judge panel, whereas there were six judges on the *Smith Electric* panel. The plaintiffs also note that the *Armstrong* court criticized the taxpayer in that case for raising its section 6511(d)(1) argument for the first time in its brief. Although this court is not bound by the decisions of the court of claims, neither of these contentions provides the court with a meaningful basis for discounting the opinion in *Armstrong*.

to be given weight by the courts, *McMartin Industries, Inc. v. Vinal,* 441 F.2d 1274, 1275–76 (8th Cir.1971), we must closely analyze the ruling." *Carle Foundation v. United States,* 611 F.2d 1192, 1195 (7th Cir.1979), *cert. denied,* 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980). Revenue Ruling 55–523, which advances the defendant's interpretation of section 6511(d)(1), provides in part that:

> Where a taxpayer sustains a net operating loss for a taxable year, but does not file a claim for refund with respect to any overpayment of tax resulting from the carryback of such loss within the statutory period prescribed in section 6511(d)(2)(A) of the Internal Revenue Code of 1954, no refund with respect thereto can be allowed. However, where an *additional* bad debt or loss on worthless securities is determined for such loss year, *the effect of which is to increase the net operating loss,* section 6511(d)(1) of the Code provides that a claim for refund may be filed with respect to such bad debt ... within 7 years from the date prescribed by law for filing the return for the year of the net operating loss which results in such carryback.

The plaintiffs' position, that section 6511(d)(1) should apply even where a bad debt deduction has decreased, thus having a negative (if any) effect on a NOL, conflicts with this revenue ruling.

In light of the above discussion, the court agrees with the defendant's interpretation of section 6511(d)(1) and finds that this provision does not apply to the plaintiffs in this case. Rather, the plaintiffs' claims for refunds for 1970 and 1967 are governed by sections 6511(d)(2)(A) and (4)(A), and are therefore untimely.

The plaintiffs make one alternative argument. They note that in November, 1975, The Indiana National Bank and the Internal Revenue Service executed Form 872–B, Consent Fixing Period of Limitations Upon Assessment of Miscellaneous Excise Taxes ("the Consent"), for the period running from January 1, 1972, to December 31, 1973. "The Consent, *which related to excise taxes imposed by Section 4251,* extended the statutory period of limitations for assessment of tax for calendar years 1972 and 1973 to December 31, 1977." Opposition Brief, p. 32 (emphasis added).

Section 6511(c) contains special rules regarding time limitations on credit or refund claims in the situation where "an agreement ... extending the period for assessment of a tax imposed by this title is made within the period prescribed in subsection (a) for the filing of a credit or refund...." (The Consent was clearly executed within this time frame.) In the case of such agreements "the period for filing claim for credit or refund ... shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof...." Section 6511(c)(1). The plaintiffs claim that under this provision, their refund claims for 1967 and 1970, filed on September 15, 1977, were timely.

However, as the defendant pointed out, the Consent upon which the plaintiffs rely was expressly limited to the assessment of excise, not income taxes. As the defendant persuasively argues,

> Section 6511(c) is traceable to Section 322(b)(3) of the 1939 Code, added by the Revenue Act of 1942.... The House Report observes: "[i]t seems only proper that if the Government is given the right by waiver to make assessment for the taxable year after the period for assessment has expired, the taxpayer should also have the right to additional time for filing refund claims for the same year." H.R.Rep. No. 2333, *supra,* 1942–2 Cum. Bull. at 414.

Since the extension of time provided for in section 6511(c) is predicated on notions of reciprocity between the government and the taxpayer, no reason exists here for extending the limitations period for the filing of income tax claims when only the period for assessment of excise taxes was explicitly extended by the parties in the Consent.

The plaintiffs argue that section 6511(c) applies broadly to "a tax imposed by this title," Title 26. However, the fact that section 6511(c) contained general terms did

not prevent the parties here from entering into an agreement relating to a specific type of tax. Surely the plaintiffs' protests would have been great here if the Internal Revenue Service had attempted to use the Consent in order to assess additional income tax. Since the Consent was limited by its terms to the assessment of excise taxes, and since the legislative history clearly shows that the intent of section 6511(c) was to establish a certain parity between the government and taxpayers, the court agrees with the defendant that the scope of the extended limitations period is defined by the scope of the Consent. Accordingly, the court finds that special limitations period in section 6511(c) does not apply to the plaintiffs' claims.

### III. Conclusion

Since the court finds that the plaintiffs' claims for refund for the years 1967 and 1970 were not timely filed, the court hereby grants the defendant's motion for partial dismissal.

It is so ORDERED this 25th day of July, 1991.