**C. E. and C. W. ARMSTRONG**

v.

**The UNITED STATES.**

**No. 616–81T.**

United States Court of Claims.

June 16, 1982.

Towner Leeper, El Paso, Tex., atty. of record, for plaintiffs. David Leeper, El Paso, Tex., of counsel.

Mary M. Abate, Washington, D. C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D. C., for defendant.

Before KASHIWA, BENNETT and SMITH, Judges.

BENNETT, Judge:

Plaintiffs bring this action for a refund of federal income taxes paid in 1972 and 1973. Defendant has made a motion to dismiss on the grounds that the claims for refund were not timely. For the reasons stated, we grant the motion.

Plaintiffs incurred a net operating loss (NOL) for the taxable (calendar) year 1975, and filed their 1975 return on October 13, 1976, after first obtaining extensions. On October 15, 1979, plaintiffs filed amended returns for the years 1972 and 1973, and sought refunds of $12,579 and $916, respectively, attributable to the carryback of the NOL from 1975. The Internal Revenue Service (I.R.S.) disallowed both claims on the grounds that recovery was barred by the statute of limitations set out in section 6511 of the Internal Revenue Code.[1] Plaintiffs filed suit in this court on October 21, 1981.

The sole issue before this court is whether plaintiffs timely filed claims for refund for the years 1972 and 1973. If the claims were not timely, they would not have been "duly filed" as required by section 7422—therefore, this court would not have jurisdiction to hear this suit. *Wozniak v. United States*, 219 Ct.Cl. 580 (1979). We therefore address this threshold question.

The statute of limitations for filing a claim for refund is set out in section 6511. The general rule of section 6511(a) is that a claim must be filed within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever is later. A special period of limitation for NOLs is contained in section 6511(d)(2)(A), which provides that a claim is timely if filed within the 15th day of the 40th month following the end of the taxable year of the NOL which results in the carryback.[2] Under this standard, plaintiffs had until April 15, 1979, in which to file their claims for refund.

In their petition, plaintiffs argue that the I.R.S. erroneously interpreted section 6511(d)(2)(A) by failing to include the extensions of time granted for filing the 1975 return in the computation of the limitation period. This argument is clearly without merit, as no statutory basis exists for such an application. *See Glenn v. United States*, 571 F.2d 270 (5th Cir. 1978). Perhaps plaintiffs were relying on the current language of section 6511(d)(2)(A), which sets the limitation period at "3 years after the time prescribed by law for filing the return (*including extentions thereof*)" (emphasis added). However, this amendment only applies to carrybacks arising in

---

1. 26 U.S.C. § 6511. Hereafter, all section numbers refer to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

2. Or within 6 months past the time set out in an agreement to extend the period for assessment, whichever is later. There is no evidence that any such agreement was entered into for the year involved.

taxable years beginning after November 10, 1978. Pub.L.No.95–628, § 8(a), 92 Stat. 3627 (1978). If plaintiffs were relying on the statute of limitation for NOLs, then, their claims would not have been timely and this court would have no jurisdiction in this matter.

■ In the plaintiffs' response to the defendant's motion to dismiss, plaintiffs raise for the first time the proposition that the governing statute is section 6511(d)(1), which provides a 7-year period of limitation for bad debts and worthless securities. Plaintiffs now claim that the NOL incurred in 1975 came as a result of a bad debt deduction (section 166(a)) taken by a partnership in which plaintiffs had an interest. If plaintiffs could successfully invoke the application of section 6511(d)(1), their claims for refund would clearly have been timely.

The pertinent part of section 6511(d)(1) states:

If the claim for * * * refund relates to an overpayment on account of the effect that the deductibility of such a debt * * has on the application to the taxpayer of a carryback, the period shall be either 7 years from the date prescribed by law for filing the return for the year of the net operating loss which results in such carryback or the period prescribed in paragraph (2) of this subsection [the general NOL provisions, discussed earlier], whichever expires the later.

Defendant argues that three facts make the special bad debt limitation period inapplicable to this case: (1) plaintiffs made a determination that the debt became worthless in 1975 and reported the deduction on their 1975 return; (2) at the time of the filing of their 1975 return, plaintiffs knew that the bad debt deduction contributed to an NOL which was available for carryback to 1972 and 1973; and (3) at the time of filing of their 1975 return plaintiffs had 30 months (until April 15, 1979) in which to file timely claims for refund for 1972 and 1973 relating to the carrybacks from the 1975 NOL.

The legislative history lends credence to defendant's assertion that section 6511(d)(1) was not meant to apply in a situation such as we have here. Section 322(b)(5) of the Internal Revenue Code of 1939 is the substantive predecessor of section 6511(d)(1). The House Report makes clear that the newly extended limitation period for bad debts was intended to cover those situations where information subsequent to the filing of the original return results in a redetermination of the year of deduction:

Under the existing law, the taxpayer may be whipsawed out of a deduction for a bad debt because of the uncertainty as to the time at which the debt becomes worthless. Later evidence often discloses that present decisions as to the year in which a debt becomes worthless are erroneous. For example, the taxpayer concludes that a debt has become bad and takes the deduction in that year, only to discover by later evidence that the debt actually became worthless 3 years previously. The statute of limitations having run on such previous year, this deduction is lost forever to the taxpayer. Conversely, where the debt actually became worthless in a year later than the year chosen by the taxpayer, the 3-year statute of limitations may operate against the Government.

To relieve this inequitable situation, the bill replaces the present 3-year statute of limitations in such cases with a 7-year statute, giving a considerably greater flexibility to the allowance of bad debt deductions in the proper year.

H.R.Rep.No.2333, 77th Cong., 1st Sess. 44–45 (1942–2 Cum.Bull. 372, 408).

It would certainly appear that Congress did not have plaintiffs' situation in mind when the special bad debt limitation section was first enacted. The 7-year period was designed to prevent possible prejudice to those taxpayers whose otherwise legitimate deduction might be placed in jeopardy by the general 3-year period. No such risk extends to a taxpayer whose bad debt deduction is taken on the original return for the year. Congress was attempting to prevent a possible injustice, not simply provid-

ing an extra 4-year grace period for dilatory taxpayers.

Defendant argues that not only must the determination of the year of the deductibility of a bad debt be made subsequent to the filing of the original return, but this determination must also occur after the expiration of the general 3-year period (or, in this instance, after the 3-year period for NOLs specified in section 6511(d)(2)(A)). Although not necessary to our decision—since plaintiffs fail to meet the first criterion— we believe that defendant's argument merits some discussion.

Defendant largely bases this reading of the statute on the language of the House Report quoted earlier—particularly the repeated reference to "later evidence." [3] Certainly, the example given in the Report refers to a situation where a taxpayer would be denied a refund for a bad debt deduction—because of the running of the general 3-year limitation period—but for the new 7-year period. However, there is no clear statement to the effect that the 7-year period *only* applies where evidence is discovered after the running of the 3-year period. Defendant also quotes from the House Report to the Tax Adjustment Act of 1945 which, in relevant part, (1) provided the precedent for section 6511(d)(2)(A) (the special limitation period for NOLs), and (2) amended section 322(b)(5) to start the running of the 7-year period for bad debts from the year of the NOL.[4] The Report states that the changes were made in recognition of the fact that the general 3-year period frequently was insufficient because—

the events which give rise to overpayments or to deficiencies attributable to

carry-backs do not occur until after the close of the taxable year, and in some cases may not occur until a considerable number of years thereafter. The taxpayer, accordingly, does not have available, under present law, the necessary information upon which to make claims for credit or refund of overpayments resulting from carry-backs *during part or all of the 3-year period* within which such claims may be filed.

H.R.Rep.No.849, 79th Cong., 1st Sess. 28–29 (1945 Cum.Bull. 566, 585) (emphasis added).

The above quote is not directly on point to our discussion since the passage refers to the new NOL limitation period, not the bad debt period per se.[5] Still, the above passage may be read as evidence of the fact that Congress did not intend that the running of the general limitation period be a mandatory prerequisite to the application of a special limitation period.

The strongest evidence that Congress did not intend to impose this additional restriction is the wording of the statute itself. Section 6511(d)(1) states that if the claim for refund relates to an overpayment on account of the deductibility of a bad debt, "*in lieu of* the 3-year period of limitation prescribed in subsection (a), the period shall be 7 years * * *" (emphasis added). So, it would appear that Congress meant that if the conditions of section 6511(d)(1) are met, the 7-year period supplants the 3-year period—not, as defendant suggests, merely takes effect only when the general 3-year period has expired. Furthermore, section 6511(d)(1) states that if the deductibility of a bad debt effects a carryback, the period shall be either the one set out in section

---

**3.** Defendant also cites Rev.Rul. 55–523, 1955-2 Cum.Bull. 497, to support its position. This ruling involves a situation where the period for refund of an NOL carryback has expired and an additional bad debt deduction has been determined for the loss year. Nowhere in this ruling is there the statement or implication that section 6511(d)(1) *only* applies when the NOL limitation period has expired. Rather, the ruling stands for the proposition that section 6511(d)(1) applies to that portion of a carryback attributable to a bad debt despite (not

because of) the fact that the period set out in section 6511(d)(2)(A) has run.

**4.** Previously, there had been no special period for NOLs and the 7-year period for bad debts ran from the year of the carryback.

**5.** It is interesting to note that defendant uses this House Report as further evidence that Congress intended that the special limitation period only applies after the other applicable statute of limitations have expired.

6511(d)(1) or the period prescribed in section 6511(d)(2), whichever expires the later. It is extremely unlikely that the drafters of this provision really meant that section 6511(d)(1) only applies after the NOL period has expired. Such an interpretation is contrary to the plain language of the statute.

Finally, the alleged overpayments for the years 1972 and 1973 are not "on account of" the deductibility of a bad debt—plaintiffs took a bad debt deduction in 1975 which has not been contested.[6] Rather, plaintiffs' overpayment resulted from the failure to utilize the NOL carryback provisions (section 172) within the time allotted under statute. The proper provision to be considered, then, is the NOL limitation period specified in section 6511(d)(2)(A), not the bad debt limitation period of section 6511(d)(1). If the real basis for the claim for refund was a redetermination of the bad debt deduction itself, then any effect on an existing or newly created carryback would invoke the 7-year period of section 6511(d)(1). For example, if plaintiffs discovered in 1980 that a business bad debt had actually become worthless in 1974, plaintiffs would have until April 15, 1982, in which to file a claim for refund for 1974. If the effect of this bad debt in 1974 is to increase or create an NOL for that year, then plaintiffs would still have until April 15, 1982, in which to file a refund claim for any carryback year.

To summarize: under the facts of this case, the 7-year period for bad debts is not applicable. The proper standard is the period set out for NOLs, and plaintiffs have failed to file their refund claims within the statutory period.

Accordingly, upon consideration of the briefs, without oral argument, we hold that plaintiffs' claims for refund are barred by the statute of limitations. Defendant's motion is granted and the petition is dismissed.

6. This is not to imply that the government has conceded the validity of the bad debt deduction taken in 1975. This issue is a question of fact which can only be decided after an initial determination of the timeliness of the refund claim is made. It should be noted that the deduction was taken in 1975—therefore the general 3-year period for assessment of a deficiency (section 6501(a)) has already run.