**INDIANA NATIONAL CORPORATION and its Subsidiaries: Indiana National Bank, et al., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 92–1039.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1992.
Decided Nov. 30, 1992.

Robert E. Johnson (argued), Anthony W. Mommer and Stephen D. Smith, Krieg, Devault, Alexander & Capehart, Indianapolis, Ind., for plaintiffs-appellants.

Deborah J. Daniels, U.S. Atty., Jeffrey L. Hunter, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, Ind., and Gary R. Allen, Ann Belanger Durney, Charles Bricken (argued), and Peter Sklarew, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and SHADUR, District Judge.*

FLAUM, Circuit Judge.

Indiana National Corporation and its subsidiaries appeal from the dismissal of their claims for refund of federal corporate income taxes for the years 1967 and 1970. The district court dismissed the claims as untimely, rejecting the appellants' arguments that a special seven year statute of limitations applied and, alternatively, that an agreement between the parties extended the limitations period. We affirm.

I.

The plaintiffs are affiliated corporations that filed consolidated Form 1120 income tax returns with the Internal Revenue Service. They filed a refund claim for 1970 based on the carryback of a net operating loss sustained by the taxpayers in 1973, and a refund claim for 1967 reflecting an investment tax credit carryback from 1970 to 1967, freed up as a result of the net operating loss carryback from 1973 to

* The Honorable Milton Shadur, District Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

1970. The IRS never formally disallowed the refund claims, and the taxpayers brought a timely refund suit in the district court.

In September of 1974, the taxpayers filed their original claim for refund of corporate income taxes for 1973. The taxpayers' 1973 return claimed bad debts of $6,038,574, and a net operating loss of $4,125,569. In December of 1974, the taxpayers filed an amended return for 1973, reducing the bad debt deduction by $162,218. They also filed a Corporation Application for Tentative Refund from Carryback of the Net Operating Loss for 1970 in the amount of $976,764, and a Corporation Application for Tentative Refund from Carryback of Unused Investment Credit for 1967 in the amount of $971,297.

On September 15, 1977, the taxpayers filed an amended corporate income tax return for 1970, carrying back the net operating loss from 1973, which generated a claim for refund of 1970 corporate income tax of $1,008,274. On the same day, the taxpayers filed an amended return for 1967, carrying back the investment credit from 1970 to 1967 (as a result of the net operating loss carryback from 1973 to 1970), which generated a claim for refund of 1967 corporate income tax of $862,466. The IRS and the appellant-taxpayers engaged in a series of conferences, concerning these and other tax years, until in 1987 the IRS and the taxpayers negotiated a settlement, titled Closing Agreement on Final Determination Covering Specific Items, for all tax years at issue except for 1967 and 1970. In the Closing Agreement, the parties agreed that the taxpayers' deductible bad debts for 1973 equaled $5,903,111, and that their net operating loss for 1973 was $3,807,182.

In the course of other negotiations between the IRS and the appellants in 1975, the parties entered into an agreement for the assessment of the taxpayers' liability for Federal Excise tax for the period from January 1, 1972 through December 31, 1973, extending the statutory period of limitations to December 31, 1977. Under Internal Revenue Code § 6511(c), any agreement to extend the period of assessment of "a tax imposed by this Title" creates an extension for filing refund claims for six months after the end of the agreed period for assessment. 26 U.S.C. § 6511(c). Title 26 of the United States Code imposes both excise taxes and corporate income taxes.

## II.

It is undisputed that a timely claim for refund is a "jurisdictional prerequisite to a refund suit." *Martin v. United States*, 833 F.2d 655, 658–59 (7th Cir.1987) (citations omitted). Generally, a taxpayer may file a claim for refund within three years after the return was filed or two years after the tax was paid, whichever is later. 26 U.S.C. § 6511(a). Several provisions create special limitation periods applicable to income taxes, and both parties agree that the general provision does not govern the taxpayers' claims.

The appellants argue that I.R.C. § 6511(d)(1), which grants a seven year period of limitation to file claims for refund in certain circumstances, applies in this case.[1] It provides, in relevant part:

*Seven year period of limitation with respect to bad debts and worthless securities*—If the claim for credit or refund relates to an overpayment of tax imposed by subtitle A on account of—

(A) the deductibility by the taxpayer, under § 166 or § 832(c), of a debt as a debt which became worthless ..., or

(B) the effect that the deductibility of a debt or loss described in subparagraph (A) has on the application to the taxpayer of a carryover, in lieu of the three year period of limitation ..., the period shall be seven years from the date prescribed by law for filing the return for the year with respect to which the claim is made. If the claim for credit or refund relates

---

1. If it did, their refund claims would be timely because they were filed before March 15, 1981. The seven year period extends from the date "for filing the return for the year of the net operating loss which results in [a] carryback." § 6511(d)(1). The date for filing the tax return for 1973, the year of the net operating loss, was March 15, 1974.

to an overpayment on account of the effect that the deductibility of such a debt or loss has on the application to the taxpayer of a carryback, the period shall be ... seven years from the date prescribed by law for filing the return for the year of the net operating loss which results in such carryback....

26 U.S.C. § 6511(d)(1).

The government argues that I.R.C. §§ 6511(d)(2)(A) and (4)(A), which create special limitation periods of thirty-eight and one half months, govern.[2] Those sections provide, in relevant part:

*Special period of limitation with respect to net operating loss or capital loss carrybacks*—If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback ..., in lieu of the three year period of limitation prescribed in subsection (a), the period shall be that period which ends with the expiration of the fifteenth day of the fortieth month (or the thirty-ninth month, in the case of a corporation) following the end of the taxable year of the net operating loss ... which results in such carryback.

26 U.S.C. § 6511(d)(2)(A).

*Special period of limitation with respect to investment credit carrybacks*— [W]ith respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback ... from a subsequent taxable year, the period shall be that period which ends with the expiration of the fifteenth day of the fortieth month, or thirty-ninth month, in the case of a corporation, following the end of such subsequent taxable year....

26 U.S.C. § 6511(d)(4)(A).

The appellants focus on the specific mention of bad debt deductions in § 6511(d)(1). They contend, parsing the language of the statute, that because (i) the claim for refund (ii) relates to an overpayment (iii) on account of the effect that the deductibility of a bad debt has (iv) on the application to the taxpayers of a carryback, (v) the period

of limitation must be seven years. According to this view, the taxpayers' claims are claims for refund based on overpayments in the years 1970 and 1967, due to the effect that the deductibility of bad debts (i.e., generating the net operating loss) had on the application to the taxpayers of a carryback (i.e., the 1973 net operating loss attributable to the bad debt deduction may be carried back). The taxpayers emphasize that, without the bad debt deduction, there would not have been a net operating loss.

The government refutes the applicability of § 6511(d)(1) by pointing out that, because the taxpayers' bad debt deductions decreased since the filing of their original return, the effect of the decreased deductions on the taxpayers' application of the carryback did not cause an overpayment for which they are entitled to a refund. Unless a taxpayer's bad debt deduction is newly discovered or increased after the original filing, according to this view, the effect of the deduction on the application of a carryback cannot account for an overpayment. For instance, in this case, in 1974 the taxpayers could have carried back their net operating loss, and then the investment tax credit, and could have applied for refunds for 1970 and 1967 related to their overpayments caused by the 1973 net operating loss and subsequent carrybacks. No new (or increased) bad debt deductions, discovered after the filing of the original return, created the net operating loss for 1973, and permitted the carrybacks. The government argues that the special seven year limitation period applies to taxpayers who discover new or increased bad debt deductions because otherwise those taxpayers would lose the opportunity to apply the carrybacks and receive refunds for their overpayments.

The essence of the appellants' case is the applicability of the language permitting the seven year extension to their claims for refund. The district court found that the language itself could support either interpretation, and therefore was ambiguous. *Indiana National Corporation v. United*

---

**2.** If the government is correct, the time for filing refund claims expired on March 15, 1977,

making the taxpayers' claims six months too late.

*States*, 775 F.Supp. 281, 285–86 (S.D.Ind. 1991). Looking to the legislative history for assistance, the court found that it favored the government's reading. The House Report of the session that enacted § 322(b)(5), the forerunner of § 6511(d)(1), explained the need for the statute in order to protect a taxpayer for whom "later evidence" discloses a miscalculation about the year in which a debt becomes worthless. H.R.Rep. No. 2333, 77th Cong., 1st Sess., *reprinted in* 1942–2 C.B. 372, 408. The example used in the House Report depicts a taxpayer who takes a bad debt deduction in one year, but then discovers that the debt became worthless three years earlier. Under the three year rule, any claim for refund for the correct year would be lost. The legislative history suggests, without using the words increase or create, that the government's interpretation follows the congressional intent behind the Code provision.

The district court's decision also finds support in the only case [3] that considered the applicability of § 6511(d)(1) to taxpayers taking bad debt deductions, *Armstrong v. United States*, 681 F.2d 774, 231 Ct.Cl. 52 (1982). *Armstrong* reasoned from the legislative history that "[t]he seven year period was designed to prevent possible prejudice to those taxpayers whose otherwise legitimate deduction might be placed in jeopardy by the general three year rule." *Id.* 681 F.2d at 776. Because the taxpayers in *Armstrong*, like the taxpayers in this case, reported a net operating loss partly attributable to a bad debt deduction on their original return, the risk of miscalculation remedied by the seven year extension does not apply. The court in *Armstrong* held that if a "redetermination of the bad

debt deduction itself . . . increase[d] or create[d] a [net operating loss]" for an earlier year, the seven year period would apply to refund claims. *Id.* at 778. Otherwise, the overpayments are not "on account of" the deductibility of a bad ·debt; they result from the taxpayers' "failure to utilize the [net operating loss] carryback provisions . . . within the time allotted under . . . § 6511(d)(2)(A)." *Id.*

The appellants use another provision in the Internal Revenue Code, § 6511(d)(2)(A)(ii), which specifically requires that the "overpayment [be] attributable to the *creation of, or an increase in*, a net operating loss carryback as a result of the elimination of excessive profits by a renegotiation," to show that Congress includes restrictive language when it intends its statutes to be so interpreted. The problem with the parallel, as indicated by the district court, is the passage of seventeen years between the discussion and adoption of the two provisions, the first in 1942 and the second in 1959. The fact that Congress did not revise § 6511(d)(1) in 1959, to include similarly specific language, simply sheds no light on the question of Congressional intent in 1942.

 The appellants further argue that the district court erred by giving undue deference to Revenue Ruling 55–523, which expressly limits the applicability of § 6511(d)(1) to situations in which the bad debt deduction is newly discovered or increased.[4] The district court, however, only looked to the revenue ruling after analyzing the language of the Code provisions, reviewing the legislative history, and evaluating the case law. It is proper to consider a relevant revenue ruling, *Carle Foundation v. United States*, 611 F.2d 1192 (7th

---

3. The appellants argue that *Smith Electric Co. v. United States*, 461 F.2d 790, 198 Ct.Cl. 644 (1972), which addressed the seven year period, supports their interpretation, and that the facts in *Smith Electric* are more analogous to this case. As the district court explained, the *Smith Electric* court explicitly limited its analysis to comparing the applicability of the seven year period for taxpayers using the reserve method to those on the direct charge-off method. *Id.* 461 F.2d at 791. Therefore, it never considered the issue in this case.

4. Revenue Ruling 55–523 provides, in relevant part

> [W]here an additional bad debt . . . is determined for such loss year, the effect of which is to increase the net operating loss, § 6511(d)(1) of the Code provides that a claim for refund may be filed . . . within seven years from the date . . . for filing the return for the year of the net operating loss which results in such carryback.

1955–2 C.B. 497.

Cir.1979), *cert. denied,* 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980), although they are not definitive. In this case, the district court correctly used Revenue Ruling 55–523 as one of many reasons to apply § 6511(d)(2)(A) and (4)(A) to the plaintiffs' claims.

The government argues, and the district court agreed, that the taxpayers' refund claims fall within § 6511(d)(2)(A) and (4)(A). These provisions specifically apply to taxpayers filing refund claims for overpayments attributable to net operating loss carrybacks and investment credit carrybacks, respectively. Moreover, interpreting § 6511(d)(1) to apply to any refund claim related to an overpayment based on the carryback of a net operating loss involving any bad debt deductions makes § 6511(d)(2)(A) redundant. The district court resolved the apparent redundancy by characterizing § 6511(d)(1) as requiring "something more" than just any net operating loss carryback, the "something more" being an increased or newly discovered bad debt deduction that affects the taxpayer's application of a carryback.

■ The appellants try to refute the government's redundancy argument by characterizing the last sentence of § 6511(d)(1) as a "sorting mechanism," which limits the refund to "the amount of the overpayment attributable to the deductibility" of the bad debts. The seven year period applies only to that part of the net operating loss that is created by the bad debt deductions, distinguishing it from § 6511(d)(2)(A). Still, there is no sound reason to grant additional time to those taxpayers with net operating losses that include bad debt deductions, unless the deductions result from recalculations which create or increase the net operating loss after the original filing. Congress obviously agrees with the appellants that determining when a debt becomes worthless is a difficult process, subject to errors by taxpayers and the Internal Revenue Service. For this reason, the special seven year limitation period protects those taxpayers who determine, after the refund limitation period for carrybacks expires, that they should

have taken bad debt deductions, or that they underestimated their bad debt deductions, in a particular year. Taxpayers like the appellants do not need this protection because they correctly determined, or overestimated, their bad debt deductions in the first place.

Although the question of which Code provisions apply is a close one, we agree with the district court's interpretation of § 6511(d)(1) and its ruling that the taxpayers' claims for refund are governed by § 6511(d)(2)(A) and (4)(A). Under these sections, the claims for refund for 1970 and 1967 were untimely.

## III.

■ The appellants argue alternatively that their claims are timely under the 1975 extension agreement with the IRS. An agreement to extend the period for assessment of taxes creates a related extension for refund claims, under § 6511(c). Because both excise taxes and corporate income taxes are part of Title 26, the appellants' argument goes, an agreement to extend the limitation period for assessment of excise taxes automatically extends the limitations period for refund claims of income taxes, or any other tax assessed under Title 26.

The extension of time for refund claims stems from considerations of fairness and reciprocity, as noted in the legislative history. H.R.Rep. No. 2333, 77th Cong., 1st Sess., *reprinted in* 1942–2 C.B. 372, 414. With that in mind, we agree with the district court that "[s]urely the [appellants'] protests would have been great … if the Internal Revenue Service had attempted to use the Consent in order to assess additional income tax." *Indiana National Corporation v. United States,* 775 F.Supp. at 290 (S.D.Ind.1991).

■ The Code provision allows extensions by agreement for any tax imposed under Title 26. That does not mean, however, that parties may not limit the terms of their agreement to a specific tax. In this case, the Consent was expressly limited to the assessment of excise taxes.

Therefore, the agreement does not affect the appellants' claims for refund of income taxes.

Because the appellants' claims for refund were untimely, the judgment of the district court is

AFFIRMED.