**GLENWOOD COOPERATIVE, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–332T.**

United States Court of Federal Claims.

Jan. 11, 1995.

William A. Neilson, New Orleans, LA, for plaintiff.

Benjamin C. King, Jr., with whom were Asst. Atty. Gen. Loretta C. Argrett, Mildred L. Seidman, and Terry T. Coles, Washington, DC, for defendant.

OPINION

BRUGGINK, Judge.

This is an action for a tax refund. Defendant has filed a motion to dismiss for lack of jurisdiction. It is based on the assertion that the claim for refund was untimely filed. After considering the written and oral arguments of the parties, the court concludes for the following reasons that the motion is due to be granted.

BACKGROUND [1]

Glenwood Cooperative, Inc. is a Louisiana agricultural cooperative engaged in sugar refining. Prior to 1983, its tax year ended on March 31. Consistent with that accounting practice, it filed a tax return for the period ending March 31, 1983 on November 14, 1983. This return reflected taxable income of $1,105,285 and a tax paid of $406,363. For reasons not related to the outcome here Glenwood wished to change to a different tax year, one ending on September 30. On November 12, 1983, Glenwood filed a Form 1128 seeking permission from the IRS to make the conversion. *See* 26 U.S.C. § 446(e)

---

1. The facts are drawn from the attachments to the materials submitted by both parties in connection with the motion to dismiss. Because the motion arises under RCFC 12(b)(1) it is unnecessary to convert the motion to one brought pursuant to Rule 56.

(1988).[2] The IRS issued a "Permission Letter" on March 16, 1984 allowing the change of tax years. This had the effect of creating a "short tax year" for the period April 1, 1983 to September 30, 1983. The IRS imposed the following conditions on its approval of the change:

(1) that [Glenwood] effect the change by filing a return for the short period ... on or before the due date of such return ... or 30 days from the date of this letter, whichever is later;

(2) that [Glenwood] close [its] books as of September 30; and

(3) that the short period loss may be taken into account in the year of change provided ... that there must be an equitable allocation of the loss among all the patrons in the year subsequent to the year of change of period.

Glenwood subsequently filed a Form 990–C (a new form mandated by the IRS for use by cooperatives in lieu of a Form 1120) for the short period. It showed a loss of $1,748,-365. The Form 1120 for the tax year April 1, 1980–March 31, 1981, showed that Glenwood had taxable income of $1,306,358 and owed tax of $562,986. Glenwood asserts that, but for the limitation imposed by the permission letter, it would have carried its short period loss back to the 1980–1981 tax year and would have received a refund of $562,986.[3]

Glenwood carried forward its short period loss to the "year subsequent to the year of change of period," i.e., October 1, 1983–September 30, 1984. On its Form 990–C for the 1983–1984 tax year Glenwood showed taxable income of $414,804. Offset against the loss carried forward of $1,748,365, this left an unutilized loss of $1,333,561. Glenwood alleges in its response to the motion to dismiss that on June 11, 1985, it filed a Form 1139, along with a Form 1120X, in which it attempted to carry this latter amount back to the tax year ending March 31, 1983.[4] At-

tached to the response is an undated and unsigned copy of the Form 1120X. Based on carrying back the unutilized loss from the tax year that ended September 30, 1984, Glenwood claimed a refund of $246,019 of taxes paid for the tax year that ended March 31, 1983. The IRS' refusal to issue that refund prompted this suit.

In its complaint, Glenwood stated that this same Form 1120X was filed "[o]n or before March 24, 1988." Attached to the Government's reply to the response brief is a copy of a signed and dated Form 1120X for the period ending March 1983. It was signed by Glenwood's Secretary on March 24, 1988, and it shows a receipt stamp from the IRS' Austin Service Center dated May 4, 1988. The court finds that there is no issue of fact as to the actual filing date. The Form 1120X plainly was not filed in 1985. The form itself, as defendant points out, was not created until October 1987. The court finds that the return was signed in March 1988 and received in May 1988. It was thus "filed" in 1988 and not in 1985.

## RELEVANT LAW AND THE PARTIES' ARGUMENTS

The tax year for which a refund is sought ended on March 31, 1983. In order to invoke the court's tax refund jurisdiction, Glenwood must demonstrate that it timely filed a refund claim. See 26 U.S.C. §§ 6511(a), 7422; *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). Section 6511(a) requires that the refund claim be filed within three years of the date of the filing of the original return (in this case November 14, 1983) or two years from the time the tax was paid (December 15, 1983). Section 6511(d)(2), however, permits a taxpayer claiming a refund based on a carryback of a net operating loss under § 172 to file a claim for refund within three years "after the time prescribed by law for

---

2. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the tax years at issue.

3. Solely for purposes of having the court address its Rule 12(b)(1) motion, the Government has not challenged that assertion.

4. Glenwood also filed a Form 1120X attempting to carry back part of the loss to the period ending March 31, 1982. In response to that claim, the IRS issued a refund in the amount of $3,918. That refund is not at issue.

filing the return (including extensions thereof) for the taxable year of the net operating loss or net capital loss which results in such carryback...." The Government argues that the 1988 refund claim with respect to the 1982–1983 tax year was thus untimely because it was filed more than three years after June 15, 1984, when Glenwood filed its return for the short tax year.

Glenwood responds in two ways. First it contends that, for purposes of determining when the three-year limitations period of § 6511(d)(2) begins, the Government is focusing on the wrong year. The Government maintains that because the net operating loss was generated in the short tax year that ended September 30, 1983, a timely refund claim had to be filed by June 15, 1987, three years from the filing of the short year return. Glenwood, however, contends that the relevant tax year to consider is the year that ended September 30, 1984. Because the loss was allocated to that tax year, it argues, for limitations purposes the loss should be treated as "generated" in that year. Thus the period in which a refund claim could be timely filed would run through June 15, 1988, three years from the filing of the return for the 1983–1984 tax year.

This assertion, fundamental to Glenwood's ability to prosecute its appeal here, is incompatible with the relevant statutory language. The phrase found in § 6511(d)(2), "the 3–year period of limitation ... shall be that period which ends 3 years after the time prescribed by law for filing the return ... for the taxable year of the net operating loss ..." has only one reasonable meaning in the context of this case. It refers to the short period, when the loss was actually incurred, not to some later or earlier tax year to which the loss might be carried forward or back.[5]

Glenwood contends, however, that the permission letter permits it to recognize the loss in the following year. It points to the condition that the loss be allocated among the patrons of the cooperative "in the year subsequent to the year of change of period." This condition is completely consistent with the language of § 6511, however. Every loss has to occur in a particular year. Virtually by definition, however, a net operating loss cannot be utilized in the year it occurs. There has to be net income against which to offset the loss. It must therefore be carried into some other taxable year to be of any benefit. The effect of the condition was to force Glenwood to allocate the loss to its patrons' accounts during Glenwood's 1983–1984 tax year. This carrying forward of the loss, albeit to the patrons' accounts and not directly to the cooperative, cannot change the fact that the short year was the "year of the net operating loss." There is no question that the loss at issue was generated in the short tax year, April 1, 1983–September 30, 1983, as plaintiff recognizes in its complaint.

Glenwood's remaining argument is that a similarly situated cooperative, St. James Sugar Cooperative, Inc., was treated differently by the IRS. The facts do not bear out the argument, however. St. James was also issued a letter permitting it to switch to a new tax accounting period, thereby creating a short reporting year for the period April 1, 1982 through September 30, 1982. The letter was different in one respect not material to the question of timeliness.[6] St. James ultimately filed a Form 1139 claim for tentative refund for the taxable year ending on September 30, 1983, in which it carried back net operating losses to the two years prior to the short tax year. This is virtually identical to what Glenwood attempted to do here, yet, as Glenwood points out, the IRS apparently

---

5. Glenwood's reliance on Rev.Rul. 70–286, 70–1 C.B. 113 and Rev.Proc. 77–26, 77–2 C.B. 537 is misplaced. The revenue ruling specifically contemplates an ordinary deduction spread ratably over the ten years succeeding the change in accounting year. In the event of a deduction in excess of income the loss would be generated within that later year. The Permission Letter in the present case did not permit treatment of the loss as an ordinary deduction, however. The loss was simply carried forward from the short period. Glenwood does not argue that it fits

within the terms of the revenue procedure, and, in any event, the Permission Letter would control the terms under which it could change its accounting year.

6. The letter to St. James was conditioned on its taking the loss into account in the year "subsequent to the year of change." Glenwood's letter permitted it to take the loss into account "in the year of change."

did not quarrel with what St. James did. The relevant difference in the facts, however, is that St. James filed its refund claim in January 1984, within three years of the date of filing its return for the short tax year. There was no problem, therefore, with the timeliness of the refund claim.

The court recognizes that the parties have disputed in the past the ability of agricultural cooperatives to carry losses forward or back. That issue is not addressed by this decision. The sole defect asserted by the Government is one of timeliness.

## CONCLUSION

For Glenwood to be able to challenge the substance of the IRS' actions with respect to conversion of the accounting year, the court must have jurisdiction. Glenwood's failure to file a refund claim prior to June 15, 1987 precludes the court from considering its arguments. The Clerk is directed to dismiss the complaint. No costs.

