**GLENWOOD COOPERATIVE, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 95–5065.**

United States Court of Appeals, Federal Circuit.

Jan. 4, 1996.

---

William A. Neilson (T.A.), New Orleans, Louisiana, argued for plaintiff-appellant. With him on the brief was Byron Ann Cook, New Orleans, Louisiana.

Jonathan A. Wasserman, Tax Division, Department of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, and Kenneth L. Greene.

Before RICH, NEWMAN and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The issue in this tax case is whether appellant Glenwood Cooperative, Inc., filed its claim for a refund of taxes within the period specified in the pertinent statute of limitations. The Court of Federal Claims concluded that it did not. *Glenwood Cooperative, Inc. v. United States,* 32 Fed.Cl. 568 (1995). We agree, and we therefore affirm.

I

Glenwood is a Louisiana agricultural cooperative. Before 1983, Glenwood's accounting period, for federal income tax purposes, ended on March 31 each year. In 1983, Glenwood sought permission from the Internal Revenue Service to change its accounting period so that its taxable year would end on September 30 each year. The IRS granted Glenwood permission to make the change, subject to certain conditions. Those conditions, which were spelled out in a "permission letter" that the IRS sent to Glenwood, form the centerpiece of the dispute before us.

The conditions that the IRS imposed on Glenwood were: (1) that Glenwood would effect the change in its accounting period by filing a return for the "short period" or "short year" of April 1, 1983, to September 30, 1983; (2) that the cooperative would close its books for the short period as of September 30, 1983; and (3) that the loss suffered by the cooperative during the short period "may be taken into account in the year of the change provided ... that there must be an equitable allocation of the loss among all the patrons in the year subsequent to the year of change of period." Glenwood accepted the conditions and formally changed its accounting period.

For the short period ending September 30, 1983, Glenwood reported a net operating loss of $1,748,365. In the year following the short period, Glenwood sought to effect the "equitable allocation of the loss among all the patrons" that was required by the permission letter by ratably canceling its patrons' "nonqualified written notices of allocation" in an amount equal to the net operating loss.

When a cooperative retains income, it may allocate the retained income to its patrons in one of two ways: by issuing "qualified written notices of allocation" or "nonqualified written notices of allocation." When the cooperative issues qualified written notices of allocation, the tax effects of the income are passed through the cooperative, and the income is recognized by the patrons. When the cooperative issues nonqualified written notices of allocation, the income is recognized at the cooperative level only. 26 U.S.C. §§ 1382(b)(1), 1385(a)(1); *see Buckeye Countrymark, Inc. v. Commissioner,* 103 T.C. 547, 561–62 (1994).

Glenwood used the device of canceling nonqualified written notices of allocation so as to retain the loss at the cooperative level rather than making it available to the patrons to claim on their separate returns. Glenwood

then sought to carry its short-period loss forward to the year ending September 30, 1984, the year following the short period. For that year, Glenwood had taxable income of $414,804. When the net operating loss for the short period was taken into account, Glenwood had no tax obligation for the year ending September 30, 1984, and it had a remaining unutilized net operating loss of $1,333,561. The IRS has not contested Glenwood's use of the short-period net operating loss to eliminate its tax liability for the year ending September 30, 1984.

In early 1988, Glenwood filed a claim seeking a refund of the taxes it paid in the year before the short period, *i.e.*, the year ending March 31, 1983. In its refund claim, Glenwood sought to carry back the unutilized portion of the net operating loss, so as to obtain a refund of the $246,019 in taxes that it had paid in that year.

The IRS denied Glenwood's claim on the ground that it was filed too late. Relying on 26 U.S.C. § 6511(d)(2), the Service ruled that a claim such as Glenwood's, which was based on a net operating loss carryback, had to be filed within three years of the date on which the return was due to be filed "for the taxable year of the net operating loss." The year of the net operating loss, according to the Service, was the short period in which the $1,748,365 loss was incurred. Because Glenwood's return for that short period was due for filing by June 15, 1984, the Service took the position that any claim based on the net operating loss generated in that period had to be filed by June 15, 1987. Glenwood responded by arguing that the year of the net operating loss was the year after the short period, *i.e.*, the year ending September 30, 1984, and that the limitations period defined by section 6511(d)(2) therefore did not end until June 15, 1988, three years after the date on which the return for the year ending September 30, 1984, was due for filing.

When Glenwood obtained no satisfaction from the Internal Revenue Service, it filed an action in the Court of Federal Claims for the amount of the refund it had sought for the year ending March 31, 1983. The Court of Federal Claims, however, agreed with the Service's position that the short period was the "year of the net operating loss" within the meaning of section 6511(d)(2). The court therefore concluded that Glenwood should have filed its claim for the year ending March 31, 1983, on or before June 15, 1987, three years after the due date for the short-period return. The court found Glenwood's position "incompatible with the relevant statutory language" in section 6511(d)(2). The statutory reference to the "taxable year of the net operating loss," the court held,

> has only one reasonable meaning in the context of this case. It refers to the short period, when the loss was actually incurred, not to some later or earlier tax year to which the loss might be carried forward or back.

The court rejected Glenwood's argument that the provision of the IRS permission letter that required Glenwood to allocate the net operating loss from the short period among the patrons of the cooperative in the year following the short period had the effect of making the subsequent year the "year of the net operating loss" for purposes of section 6511(d)(2). The court explained that the required allocation of the loss "cannot change the fact that the short year was the 'year of the net operating loss.'" The court therefore directed that Glenwood's complaint be dismissed. This appeal followed.

## II

The issue in this case is a narrow one. It is clear that, but for the terms of the IRS permission letter, Glenwood's refund claim for the year ending March 31, 1983, would be out of time. That is because the net operating loss at issue in this case was generated during the short period of April 1, 1983, through September 30, 1983, and because the "year of the net operating loss" for purposes of section 6511(d)(2) is considered to be the year in which the net operating loss is incurred, not the year in which the loss is used to reduce a tax liability. *Armstrong v. United States,* 231 Ct.Cl. 52, 681 F.2d 774, 775 (1982); *Nelson v. United States,* 757 F.2d 1537, 1539 (5th Cir.1985); Rev.Rul. 65–281, 1965–2 C.B. 444, 445.

■ Absent the permission letter, the year ending September 30, 1984, could not be the "year of the net operating loss" because, under the governing provisions of the Internal Revenue Code, the net operating loss from the short period could not be used to create a new net operating loss in the subsequent year. *See* 26 U.S.C. § 172(c), (d)(1) (net operating loss can be deducted from taxable income to reduce tax liability, but not to generate a new net operating loss). That rule is designed to ensure that a large net operating loss in one year will not continue to generate new net operating losses in future years and thus extend the benefits of the original net operating loss beyond the statutorily prescribed period. *See* 1 Boris I. Bittker, *Federal Income Taxation of Income, Estates & Gifts* ¶ 25.11.2, at 25–55 (1981); 7 Jacob Mertens, *The Law of Federal Income Taxation* § 29.03 (1994).

Glenwood acknowledges that general rule, but argues that the general rule has been modified in this case by the terms of the permission letter in which the Service accepted Glenwood's proposal to change its annual accounting period. Under Glenwood's interpretation of the letter, Glenwood was entitled to treat the net operating loss from the short period as an ordinary deduction, rather than as a net operating loss deduction, in the year following the short period. If accorded that treatment, the net operating loss from the short period would give rise to a new net operating loss for the year following the short period, and that later year would then become the "taxable year of the net operating loss" for purposes of section 6511(d)(2). Accordingly, Glenwood contends that its refund claim, which was filed less than three years after the date for filing the return for the year ending September 30, 1984, must be regarded as timely.

We agree with the Court of Federal Claims that the IRS permission letter cannot be read as Glenwood urges. There is nothing in either the permission letter or any statute, regulation, or other authority that gives Glenwood the right to treat the net operating loss for the short period as an ordinary deduction in the year following the short period. The permission letter itself says nothing about treating the net operating loss as an ordinary deduction, and it does not by its terms or by any implication that we can discern waive the prohibition in section 172(d) against treating a net operating loss as an ordinary deduction.

### A

■ Glenwood's principal argument is that if the permission letter is read in light of the regulatory background, it must be interpreted to allow Glenwood to treat the short-period net operating loss as an ordinary deduction in the subsequent year.

In order to address Glenwood's argument, it is necessary to set out the statutory and regulatory scheme in some detail. The Commissioner of Internal Revenue has broad authority to approve changes in a taxpayer's accounting periods. 26 U.S.C. § 442. The Commissioner exercises that authority by imposing conditions on tax year changes to prevent taxpayers from using those changes to distort income and gain tax benefits that would otherwise not be available. *See, e.g.,* 26 C.F.R. § 1.442–1(b)(iii) (distortion in income may occur when change of tax year creates substantial short-period net operating loss). When the Commissioner sets out conditions on a proposed change in accounting period, the change may not go into effect until and unless the taxpayer accepts the conditions. 26 C.F.R. § 1.442–1(b).

Revenue Procedure 77–26, one of the authorities on which Glenwood relies, provides that if a taxpayer's change in annual accounting period produces a large loss in the resulting short period, the Commissioner may approve a request for the change but require the taxpayer, in lieu of carrying the net operating loss back to prior years, to deduct the amount of the net operating loss ratably over the ten-year period following the short period. Rev.Proc. 77–26, 1977–2 C.B. 537. Revenue Ruling 70–286 in turn provides that when the Commissioner requires the net operating loss to be allocated over a ten-year period, the loss "loses its identity as [a net operating loss] and becomes an ordinary deduction in arriving at the taxable income for each of the succeeding ten years to the extent of one-tenth of the loss incurred in the

short period." Rev.Rul. 70–286, 1970–1 C.B. 113.

If there had been such a ten-year allocation in this case, Glenwood would have been entitled to treat the loss allocated to each year as an ordinary deduction, and any loss resulting from that deduction would be treated as a new net operating loss. Glenwood, however, was not required to spread its short-period loss ratably over ten years, but was directed to carry over the entire loss to the year subsequent to the short period.

By its terms, Revenue Ruling 70–286 does not apply to all changes in accounting periods, but only to those in which the Commissioner specifically requires ten-year amortization of the net operating loss from the short period. Nothing in Glenwood's permission letter requires that treatment of the net operating loss or otherwise suggests that Revenue Ruling 70–286 is applicable to Glenwood's case.

The purpose underlying Revenue Ruling 70–286 likewise has no application to Glenwood's situation. That ruling was designed to remedy the statute of limitations problem created when the IRS requires a taxpayer to spread a net operating loss over a ten-year period. If the Service did not allow such a taxpayer to treat the ten portions of the net operating loss as ordinary deductions in each of the subsequent years, the three-year statute of limitations in section 6511(d)(2) for refund claims relating to net operating loss carrybacks would begin to run from the short-period tax return due date; after the third of the ten years subsequent to the short period, the limitations period would be exceeded, and the taxpayer would be barred from carrying back any further portion of the loss when it exceeded the given year's income. Unless the net operating loss were treated as an ordinary deduction, therefore, the amortization requirement would "prevent a taxpayer from deriving the full benefit from the net operating loss incurred in the short period," a consequence the Service did not intend. Rev.Rul. 70–286, 1970–1 C.B. 113.

In Glenwood's case, since the short-period loss was required to be carried over to the subsequent year only, the three-year time

bar of section 6511(d)(2) would not have the same preclusive effect on any part of the short-period loss. While the question whether such a carryback would be allowed is not before us, we simply note that the concerns that apparently motivated the Service to modify the treatment of the short-period operating loss in Revenue Ruling 70–286 do not apply in cases such as Glenwood's. Thus, there is no justification, either in the language or the policy of Revenue Ruling 70–286, to apply the special treatment of the net operating loss·called for by that ruling in the very different setting presented by Glenwood's case.

In sum, because neither the permission letter nor the regulations on which Glenwood relies allowed Glenwood to treat the short-period net operating loss as an ordinary deduction in the subsequent year, the Service cannot be deemed to have waived the statutory prohibition against using a net operating loss in one year to generate a new net operating loss in a subsequent year.

### B

■ Glenwood also argues that the IRS has treated it differently from the way the Service treated another cooperative that was similarly situated and that received a generally similar permission letter when it sought to change its annual accounting period. It is true that the Service permitted the other cooperative to carry forward its net operating loss from the short period and then to carry the remaining portion of that loss back to a year preceding the short period. It is also true that while Glenwood has been permitted to carry its short-period loss forward and use part of the loss during the year after the short period, it has not been permitted to carry the rest of the loss back to a taxable year before the short period. But the Service's refusal to allow Glenwood to carry the loss back to the year ending March 31, 1983, is the product of Glenwood's untimely refund claim, not the product of a change in the Service's position as to whether a short-period net operating loss may be carried back in that manner. The critical difference between the two cases is that in the case that Glen-

wood cites, the cooperative filed its request for a refund within three years of the date for filing the return for the short period in which the net operating loss was incurred, while Glenwood did not. The other cooperative therefore did not face the statute of limitations problem that confronts Glenwood. For that reason, the two cooperatives are not similarly situated, and Glenwood cannot claim the right to the same treatment that was accorded to the other cooperative.

### III

Because there is nothing in Glenwood's permission letter or the regulatory scheme that causes us to look to any taxable year other than the short period as the "year of the net operating loss," the three-year statute of limitations for filing a claim for refunds stemming from that net operating loss began to run on the last day for filing the return for the short period—June 15, 1984. Glenwood's claim, which was filed more than three years after that date, is therefore barred by the statute of limitations.

*AFFIRMED.*